1  JIAN HU
2  8675 MARTINIQUE BAY LANE
   LAS VEGAS , NV 89147
3  TEL: (702)635-5095 Email: jinghu1168@yahoo.com
4  PLAINTIFF, IN PROPER PERSON

FILED ___ RECEIVED ___
ENTERED ___ SERVED C...
COUNSEL/PARTIES OF RECO...

FEB 18 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
By AMMi DEPUTY

5  **UNITED STATES DISTRICT COURT**
6  **DISTRICT OF NEVADA**

7
8  JIAN HU, Pro Se                     )   Case **2:25-cv-00320-NJK**
                         Plaintiff,    )
9        vs.                           )
10 ARIA RESORT & CASINO LLC,           )   **COMPLAINT**
   MGM RESORTS INTERNATIONAL,          )
11 ROES BUSINESS ENTITIES I to X,      )   **DEMAND FOR JURY TRIAL**
   DOES I to X, inclusive,             )
12 _____    )
                         Defendants    )

13      Plaintiff Jian Hu, in proper person, hereby demand a trial by jury for her complaint
14 against ARIA RESORT & CASINO, LLC., a domestic limited liability company hereafter refer as
15 "Aria", MGM RESORTS INTERNATIONAL, a foreign corporation; hereafter refer as"MGM",
16 inclusive are Defendants; and the names DOES I-X and ROE BUSINESS ENTITIES I-X,
17 inclusive, are presently unknown, and Plaintiff will amend this complaint to insert the name's'
18 when ascertain.

19                          **JURISDICTION**
20 I. Plaintiff's case belongs in federal court because:
21 (a) The claims stated in this complaint  involves  federal laws and the United States
22 Constitution 14th Amendment Equal Right Protection.
23 (b) Defendant MGM Resorts is a foreign corporation and doing business in Nevada
24 State.
25 (c) This Court possesses jurisdiction over the matter because Plaintiff's claim arises from
26 the U.S. Constitution 14th Amendment and the amount of damages is more than $75,000.
27                             **VENUE**
28 II. Venue is appropriate in this Court because:
   (a) All the events Plaintiff is suing about happened in this district at Las Vegas, State of

Nevada.

(b) Defendants are located in this District and defendant MGM Resorts is mother company of Aria and incorporated in Delaware State, USA.

## INTRADISTRICT ASSIGNMENT

III.  Because this lawsuit arose in Clark County, Nevada, it should be assigned to the Southern Division of this Court.

## PARTIES

**I.  Plaintiff, is an individual , US citizen and at all  times  pertinent hereto was , a resident of Clark County, City of Las Vegas.**

Name :      JIAN HU,

Address:      8675 MARTINIQUE BAY LANE, LAS VEGAS, NV 89147

Telephone:  (702) 635-5095

**II. Defendants.**

**Defendant 1 is a LLC and incorporated in the USA of State Nevada and DBA in Las Vegas,**

Name:      ARIA RESORT & CASINO, LLC.

Address:      3600 LAS VEGAS BOULEVARD SOUTH LAS VEGAS, NV 89109

Telephone:  (702) 693-7120

**Corporation Agent Address:**

112 NORTH CURRY STREET, CARSON CITY,

NEVADA 89703

**Defendant 2 is an international holding company, mother company of ARIA RESORT & CASINO, LLC;  Incorporated in the USA of State Delaware and DBA in Las Vegas, Nevada,**

Name:      MGM RESORTS INTERNATIONAL,

Address:      3600 LAS VEGAS BOULEVARD SOUTH LAS VEGAS, NV 89109

Telephone:  (702) 693-7120

**Corporation Agent Address:**

112 NORTH CURRY STREET, CARSON CITY, NEVADA 89703

**STATEMENT OF FACTS**

1. Aria Resort & Casino, LLC. is an Incorporation formed in The State of Nevada, USA and doing business in Las Vegas, Nevada at 3600 LAS VEGAS BOULEVARD SOUTH, LAS VEGAS, NV, 89109; and corporation agent's address is 112 NORTH CURRY STREET, CARSON CITY, NEVADA 89703. Attached hereto is the company's information sheet filed in United States Securities Exchange Commission Form S-3ASR Marked Exhibit (1).

2. MGM Resorts International is an Incorporation formed in State of Delaware, USA and doing business in Las Vegas, Nevada at 3600 LAS VEGAS BOULEVARD SOUTH, LAS VEGAS, NV89109, and corporation agent's address is 112 NORTH CURRY STREET, CARSON CITY, NEVADA 89703. Attached hereto is the company's information that can be seen in Exhibit (1).

3. MGM Resorts International is mother and holding company of Aria Resort & Casino, LLC. both share and are doing business at the same address 3600 LAS VEGAS BOULEVARD SOUTH, LAS VEGAS, NV8109, and corporation agent's address  112 NORTH CURRY STREET, CARSON CITY, NEVADA 89703, the company's information can be seen in  Exhibit (1)

4. Plaintiff  Jian Hu was a poker dealer at the Aria Resort & Casino, worked at Aria casino poker room from Nov 28th, 2018 to Aug 24th, 2023.

5. Aria Resort & Casino "DID NOT" have ANY written house policy for poker dealers taking a tip from pre tip game  at the time  when I was terminated.

6.  Plaintiff Jian Hu took a four-week vacation from July 19th, 2023 to August 16th, 2023. On August 17th, 2023,  plaintiff returned to work, was escorted by Ryan Owen Kirk( here after refer as Ryan Kirk),  who is Aria Poker Operation Director ,  to meet  the surveillance officer named Beau, hereafter refer as Beau.   Kitty Cheng was present as interpreter, and another  Aria female employee whose name was unknown, as reporter at the surveillance office for the meeting.

7.   During the meeting as stated in above 6, Plaintiff was asked by Beau what happened at table 20 on July 19th 2023 while she was dealing at the table.  Plaintiff replied to Beau that the winner changed his mind, asked for the pre tip back after he won the whole pot,

and told plaintiff : "Dealer, I don't do pre tip". Then Plaintiff gave the pre tip $20 back to the player, which was the pre tip taken from the pre tip game. The player tipped plaintiff $1 instead. The same player also won the second hand, then tipped plaintiff another dollar. Beau told plaintiff that "what you told me and what I saw from the video is different, you are lying." Plaintiff replied that I didn't lie. Beau told plaintiff that from the incident that happened at table 20 on July 19th 2023, they checked Plaintiff took 7 times total about $ 200 tips from pot in the last week. Plaintiff asked Beau that all dealers did the same as Plaintiff did taking tip from the pot of the pre tip game, why only plaintiff was the only one was accused. Beau replied that is because a player complained about you (plaintiff). However Beau didn't say anything about the complaint details, such as, what's the name of the player, when did the complain occur, what was the complain regarding. Beau and Ryan Kirk didn't give plaintiff any answer or explanation.

8. At the meeting stated in 7, Ryan Kirk told plaintiff that you couldn't take tips from pot. Then plaintiff told Ryan Kirk: "ok, from now on, I(plaintiff )don't take tip from pot, let them hand to me. But , every dealer was taking the tip from the pot of pre tip game, why was I(plaintiff) the only one prohibited ?"Ryan Kirk didn't give me answer.

9. The meeting stated in 6,7,8, lasted about one hour. After the meeting , Ryan Kirk took me to another room to meet the gaming agents. The gaming agent was Tyler Boelter , Plaintiff asked Tyler Boelter that I (plaintiff) didn't steal , why I (plaintiff) have to see you? He (Tyler Boelter) said: " Because player complained about you (plaintiff) ". Tyler Boelter said that plaintiff took chips from pot total 7 times for about $ 200 in the last week. Then plaintiff replied that the $200 was tips from the players and it's plaintiff's part of legal income. Also all other dealers did the same, did you (Tyler Boelter) check other dealers how many times they took tips from pot ,and total how much they took? Maybe other dealers took more times and took more money than me(plaintiff ), Tyler Boelter didn't answer the question.

10. Dealers take pre tip from the "pre tip" game while the game was still in progress is an unwritten rule and common practice in most casinos including Aria, it can be seen and

proofed from the pictures , that were clipped from the video that was recorded by plaintiff at Aria poker room on December 17th, 2024. The said pictures attached herein this complaint marked as Exhibit (2). Further more, declarations from two currently experienced dealers Thomas Sakowych and XuFang Yang as Exhibit (3) and Exhibit (4).

11,    I  was cited wrong doing for taking tip from the pot on July 19th, 2023 during the "pre tip" game still in progress; **HOWEVER** after I  reviewed  my working days records  and the travel records at home on the night of August 17th 2023, I found out, **I  was off and was not working on the day July 19th ,2023**, After I discovered that , I was not working on July 19th, 2023, I contacted Ryan Kirk, MGM HR and gaming agency Tyler Boelter right away, told them I didn't work on  July 19th, 2023 and how and why I was cited for wrong doing? However none of them (including Ryan Kirk, MGM HR and gaming agency Tyler Boelter ) wanted to help me dismiss the case. I emailed to MGM corporation poker director Sean McCormack too, he had never answered my email( attached contact emails hereto marked Exhibit (5)). About incident happened  date  and the table number of the player "complained" can been seen in the report written by the meeting reporter( I can't recognize her name from the report)  from the meeting on August 17th, 2023 at about 9pm.  The said report shows "7/19/23, table 20". A copy of said report  attached hereto marked as  Exhibit (6). The incident day July 19th, 2023 also can been seen on the "Suspension Pending Investigation Notice ", shows " incident day: "7/19/23". A copy of the notice attached hereto marked as Exhibit (7).  The said notice, Exhibit (7) was filled by Ryan Kirk, then he handed to plaintiff before plaintiff was sent  home on  the night August 17th, 2023. In the meetings that were held on August 17th, 2023 , Ryan Kirk,  Beau, and gaming agent Tyler Boelter  only brought up the incident that happened on July 19th 2023 at table 20,  However the other  times, they never talked  about the details of those incident days and tables.

12.    On August 21st 2023, MGM HR officer Kat Ball( here after refer as Kat Ball), Ryan Kirk and plaintiff had a phone conference. In the conference , plaintiff complained  to Kat Ball, Plaintiff was mistreated by Aria poker room management. Plaintiff  also told Kat Ball that

plaintiff was accused of wrong-doing on July 19th, 2023 by Ryan Kirk , but Plaintiff did not work on July 19th 2023,  Plaintiff was off July 19th, 2023. Even though Plaintiff tried to resist the horrible treatment from Aria management, but no solution , Plaintiff was wrongful terminated.  Such an act is malicious and oppressive. Plaintiff was so proud of her job, so proud of Aria, so proud of MGM, Plaintiff loved there just like she  loved her family, however Plaintiff got horrible treatment instead. Since plaintiff was malicious terminated by defendants, Caused plaintiff income damages,  emotional damages, and deep depression. When Plaintiff started this job at Aria poker room in 2018,  plaintiff planned to work at Aria Casino for the next 30 years until plaintiff retired. After retiring Plaintiff may  still keep her job, because sit down dealing, is easier than table games stand up dealing. That's why Plaintiff didn't transfer to table game even though Plaintiff also deal table games very well.  Plaintiff loved this job so much , Plaintiff would never destroy the  job by violation of law or any house policy.   Plaintiff knew she could not find any  job better than this job. However, Plaintiff was unlawfully terminated, This is an absolute catastrophe and deeply unjust. When plaintiff got the separation letter from Defendants on August 24th, 2023,  plaintiff felt a mental and  physical breakdown, Plaintiff felt heart broke into thousand pieces. Plaintiff was so depressed,  felt  was going to die, plaintiff's heart kept beating too fast, Plaintiff's friend Thomas Sakowych ( here after refer as Tom) took plaintiff to the University Medical Associates emergency room,  Medical staff worked several hours  resuscitating plaintiff's acute heart disease. ( the medical report has 15 pages, plaintiff attached the first page of the medical report hereto marked Exhibit(8)).

       13.     In August 2023 Plaintiff filed for an unemployment benefits claim.  Nevada Department of Employment, Training, and Rehabilitation (here after refer as DETR) rejected plaintiff's claim because defendants falsely contended Plaintiff's actions were misconduct.   Plaintiff appealed DETR first decision which plaintiff was rejected. The DETR Appeal (Referee) hearing was held on March 27th, 2024, Ryan Kirk and Aria objected  the unemployment benefits claim by submitting black screenshots from the video of table 20 (attached marked as Exhibit(9)). Those screenshots were unclear and couldn't identify who was working at the table

this raised doubt about the evidence's truth.  The timestamp in one of those black screenshots shows "7-17-2023 22:08:21".  After  plaintiff and Tom viewed videos at Nevada Gaming Control Board ( here after refer as NGCB) office on January 9th 2025, Plaintiff found out this timestamp is not the same as the timestamps showed on some other videos.   Plaintiff and Tom saw two different timestamps( different time, different font style and different format) in the same video on January 9th, 2025 at NGCB office. At least 2 videos showed two different timestamps. Defendants accused plaintiff wrong doing on July 19th 2023, but  saw the screenshots were on a different day. However, Plaintiff was not on the table 20 at this time "7-17-2023 22:08:21". About those black screenshots submitted by defendants as DETR referee hearing evidence,I sent one  of those screenshot to A I ( ChatGPT) recently , below is **analysis made by ChatGPT:**

**"Analysis of the Surveillance Screenshot: Potential Issues and Suspicions:**

**This surveillance screenshot exhibits multiple issues that could significantly impact its credibility as evidence. Below are key observations and concerns:**

**A. Extremely Poor Image Quality – Possible Intentional Downgrade**

•    **The image appears overexposed with extreme contrast, almost inverted in black and white, making it difficult to discern key details such as hand movements, chip transactions, and facial expressions.**

•    **The brightness and contrast appear artificially adjusted, possibly to obscure crucial details and make it harder to verify actions.**

•    **A standard casino surveillance video typically maintains high-resolution clarity to ensure all transactions and movements are visible for security and legal purposes.**

•    **If the original surveillance footage is of higher quality, but the casino provided this heavily degraded screenshot, it may indicate an intentional effort to obscure evidence.**

•     Has the casino provided the full, unaltered original footage? If the quality difference is too drastic, this screenshot could be manipulated or misleading.

B.     The timestamp appears much clearer than the rest of the image. Despite the extreme distortion and poor visibility, the timestamp remains legible and distinct, which could indicate that it was added separately rather than being part of the original footage.

C.     Does the timestamp format match the casino's standard surveillance system? Casinos typically use standardized timestamp formats, such as:

•     YYYY-MM-DD HH:MM:SS (e.g., 2023-07-17 22:08:24)

•     MM/DD/YYYY HH:MM:SS (e.g., 07/17/2023 22:08:24)

•     Does the font, size, format or positioning of the timestamp match other casino surveillance footage? If this screenshot's timestamp format differs from other surveillance videos, it raises suspicions that it may have been modified or fabricated.

🔲 1. The image quality is excessively degraded, possibly to obscure key details.

🔲 2. The timestamp appears clearer than the rest of the image, which may indicate post-editing or fabrication.

🔲 3. The footage may have been edited, with missing frames or manipulated timestamps.

🔲 4. The image fails to clearly depict critical actions, making it weak as evidence."

🔍 Potential Issue:

•     Has the video been trimmed or altered to remove key footage?

•     Does the footage have missing frames (frame dropping) or timestamp inconsistencies? If the video suddenly skips forward in time or lacks certain moments, it may have been edited to remove unfavorable evidence.

.        **If the casino is claiming you took chips or money, the footage should clearly display the transaction, but in this screenshot, it is impossible to verify any such action.**

•        **If the casino has provided a low-quality, unclear image, it raises the question: Why wouldn't they provide a clearer, higher-resolution video if the evidence exists?......"**

14.    Plaintiff got off at 3:30 am July 18th 2023 from  table 23. The graveyard manager Eda went to  table 23 to ask plaintiff " Jian you want to go or stay?"  Plaintiff hesitated for several seconds, Plaintiff was thinking: "I (plaintiff) don't have to leave early, my trip starts the next morning, I (plaintiff) am on table 23, I (plaintiff) don't want to miss table 1, but table 1 is not going , so I (plaintiff) choose to go" Table 1 is the high Roller table, usually it's the best table to make tips in this poker room, nobody wants to miss this table, but table 1 was not going at that time, so Plaintiff left from table 23 on 3:30am July 18th, 2023. Plaintiff had never been the opposite side of the room table 7and table 8(a sketch of Aria poker tables location attached as Exhibit(10)). Plus Ryan Kirk texted plaintiff on August 18th, 2023, he said plaintiff's last incident (took pre tip from pot) day is July 17th, 2023.  Defendants submitted the video recorded table 7 as plaintiff's last incident table that happened on July 18th, 2023, this is inconsistent. Aria incident report( attached as Exhibit(11)) details show, I worked on  table 8 from 3:00am to 3:30am on July 18th, 2023, this is impossible. Too much difference from when I got off from table 23 at 3:30am on July 18th, 2023. Check backwards, I should be on table 20 about 1:00am on July 18th 2023.... Given all of  this,  I strongly suspect some of the incident report document evidence and some of videos evidence like table 20 and table 7 had been tampered and fabricated. Defendants fabricated plaintiff was on table 20 at 10:08pm on July 17th, 2023, The incident report shows before table 20 plaintiff was on table 19 from 21:31 to 22:04, this is also wrong. Plus all tables following table 20  aren't  at the correct time, meaning, the incident report from defendants that  showed, on July 17th 2023 from 21:30 through  3:30am on July 18th,2023, from table 19, all tables Plaintiff dealt should false, either on wrong time or on wrong table and wrong time. Table 7 and table 8 I had never been to on the day of  July 18th,

2023. Plaintiff got off 3:30am from table 23, on July 18th, 2023. After I punched out about

3:33am on July 18th 2023, Plaintiff called Tom to pick her up. Plaintiff didn't drive car to work

on this day. About what happened on plaintiff's last work day July 17th 2023 to July 18th 2023,

and what happened on table 20 and the time 3:30am Plaintiff got off from the table 23, Plaintiff

remember all those very clearly like it just happened yesterday. A former coworker told plaintiff,

from when Plaintiff was terminated on August 24th 2023, Aria poker room management had

not even mentioned pre tip with dealers, Aria dealers still kept doing the same taking of a  pre

tip from the pot. After Plaintiff determined from Aria, Tom talked with his coworkers some time

about plaintiff got mistreated,  singled out from Aria. On September 15th, 2023, about 2:50pm,

Tom with his coworkers at Bellagio poker room, including some dealers and a poker room

manager, they sat down at table 2, talking about plaintiff got fired from taking pre tip from pot,

The manager Amani Peters told them, he found out the Aria poker room management wanted

to get rid of plaintiff and fired her. Everyone on the table 2 was surprised. Therefore plaintiff's

termination by taking tip from pre tip game is unlawful, unjust and discriminated. Further more

defendants falsely reported plaintiff "theft" is defamation, Ryan Kirk also falsely testified

plaintiff did "theft" under oath in DETR referee hearing.

15. In October 2023, Plaintiff found two jobs , poker dealer at Resorts World Casino

and table game dealer in Palms Casino, Plaintiff was so happy for getting these jobs and forgot

the suffering from defendants. But , this didn't last long, plaintiff lost these two jobs. On

January 8th 2024,  while Plaintiff was performing her duties as a dealer at Palms Casino, I was

abruptly and publicly removed from my position by a manager, she escorted plaintiff off the

gaming table and took plaintiff to the Palms Casino Human Resources department.  Upon

arrival at Palms Casino HR, Plaintiff was informed that her gaming license was revoked,

rendering plaintiff ineligible to continue working in the casino industry. My gaming license

revocation by Nevada Gaming control Board, without prior notice,  explanation, or gave plaintiff

any opportunity to contest or respond to the allegations that led to this decision before Plaintiff

lost her jobs.

16.    This sudden and highly public removal caused plaintiff severe humiliation, distress, and reputational harm. Plaintiff was treated as if Plaintiff had engaged in misconduct, despite plaintiff didn't commit any wrong doing. The manner in which plaintiff was removed in front of her colleagues, casino patrons, and other staff members irreparably damaged plaintiff's professional reputation and subjected me to immense emotional distress.

17.    This act was not only unjust but also indicative of a broader retaliatory scheme orchestrated by Defendants, which had fabricated evidence and false accusations to justify plaintiff's termination. By relying on manipulated videos evidence and misleading documentation, Defendants successfully influenced the revocation of her gaming license, effectively blacklisting plaintiff from the industry. Plaintiff's spirit was broken again, Plaintiff has lost faith in people, and even in herself. Plaintiff did nothing wrong, yet plaintiff kept getting knocked down again and again, It felt like justice was failing plaintiff , despite plaintiff's integrity and lawfulness. Even though plaintiff was suffering and depressed, Plaintiff had to keep fighting. Couple days later plaintiff appealed to Nevada Gaming Control Board( here after refer as NGCB).

18.    On January 31st, 2024, Plaintiff with her witness Tom, went to Aria Casino to request to view videos and to request plaintiff's working time card and working schedule information. Tom showed his working badge from Bellagio, told the securities where we're going.  Aria securities let plaintiff and Tom pass the two gates, went  downstairs to the security office. The security manager refused to show any videos. Then  plaintiff and Tom went to Aria poker room. Plaintiff saw Ryan Kirk, he refused to help plaintiff. The day shift manager Ryan Peters promised he would help plaintiff get time card. On February 8th, 2024,  plaintiff called back to Ryan Peters, Ryan Peters told plaintiff that " I am glad to hear from you, but I have been told, I couldn't help you anymore, otherwise I would be suspended, I don't want to be suspended, hope you understand me.." So Plaintiff couldn't get help from Ryan Peters either. Plaintiff kept emailing to MGM HR  staff,   but nobody could help plaintiff. Plaintiff have never got her working time card and work schedule information.

19. On February 24th 2024, plaintiff's witness Tom was taken by his manager Craig Larson to the office, Craig Larson, the top manager in the Bellagio poker room, told Tom, MGM personal called him and said Tom trespassed at Aria, they asked to fire him. Tom told Craig Larson, he showed his working badge told the Aria securities where we were going, then the Aria securities let us pass two guard gates to Aria Casino security office and Aria poker room. Tom didn't do anything wrong, The Bellagio top manager Craig Larson told plaintiff's witness Tom: "You are good employee, I won't fire you , just give you a verbal warning". Tom told plaintiff immediately on his break time, Plaintiff was so surprised and didn't believe Tom, after he explained to what happened, plaintiff was feeling so worried and guilty. Tom is plaintiff's witness and friend, he almost got fired from defendants falsely accusing Tom of trespassing. This is the first time plaintiff's witness Tom has been intimidated and tampered by defendants. On January 17th 2025, Tom walked out from work. He told plaintiff , he got Defendants employee relations manager intimidation about the declaration for my case. Tom was very upset , he couldn't keep working, walked sick out immediately. Tom called sick the second day, he wanted to call sick the third day, Plaintiff suggested him go to work, he was still got emotional distress about the intimidation from the defendants . This was the second time Plaintiff's witness Tom got intimidated by defendants. Jackson Young , he is plaintiff's former coworker from Aria, he is currently working at Aria poke room. He was in plaintiff's witnesses list in plaintiff's DETR referee hearing. Jackson Young told plaintiff and Tom, he also took pre tip from pot in the same pre tip game as I did. After I was defamed by defendants, plaintiff and Tom with Jackson Young, three people met together a lot of times. Jackson Young knew Plaintiff got defamed from the defendants, Jackson Young told Plaintiff, he wanted to help plaintiff as much as he could. Jackson Young helped plaintiff for some of paperwork for plaintiff's case. Jackson Young told plaintiff and Tom that Jackson Young also got mistreatment and intimidation from Aria poker room manager Ryan Kirk before I was terminated by defendants, Jackson Young complained about Ryan Kirk to higher manager right away. But from September, 2024, Plaintiff couldn't talk with Jackson Young anymore, it was very strange.

Since defendants did to plaintiff including false player complaint, false screenshots evidence, false incident report evidence, false testimony and lots false videos, One could tell, defendants got used to making up false things. Defendants intimidated Jackson Young, intimidated the manager Ryan Peters who wanted to support plaintiff , intimidated plaintiff and her witness Tom several times. Plaintiff strongly suspect, defendants may have intimidated Jackson Young as plaintiff's witness. All those showing, defendants did their utmost even though defendants broke multiple federal laws and Nevada State Laws to prevent plaintiff from seeking justice.

20.  The gaming hearing held On April 23rd, 2024, in the hearing, Gaming agent Gus Winterton told plaintiff and Tom, District Attorney denied plaintiff's case on December 1st 2023. Defendants submitted 13 videos for the hearing. In the hearing about 10:30am, NGCB received the 13 videos from defendants. However, in the hearing plaintiff and Tom only saw 3 of 13 videos. When plaintiff and Tom kept viewing the video of table 20, the gaming officer Augusta Massy stopped us, Augusta Massy said that no more videos to see. The video of table 20 on July 17th 2023, was not clear but grainy, the video motion was not smooth, some speeds of the video were too fast, couldn't see clearly, Tom kept asking for rewinding, he couldn't see clearly either. But when plaintiff and Tom viewed it on January 9th 2025 at NGCB office, the video was very clear, and the playback was smooth, this is very strange. In this hearing, Even though Plaintiff suspected defendants tampered the video of table 20, even though Plaintiff submitted lots evidence and witnesses, on June 3rd, 2024, NGCB sent the decision letter to plaintiff , NGCB still objected to plaintiff's registration of gaming employee . Plaintiff got another heartbreak. Plaintiff appealed again, plaintiff's attorney Laura demanded a copy of the 13 videos for next hearing, but NGCB rejected such demand. Plaintiff and Tom only can go to NGCB office to view videos evidence from defendants.

21.  Since plaintiff lost all of her jobs, Plaintiff and plaintiff's witness Tom kept spending money and time to seek justice, to see attorneys and talk with them on the phone or contact by emails. On most work days, from Monday to Friday, plaintiff and Tom either were talking with attorneys on phone or were doing the emails and records or were going to see attorneys.

Plaintiff and Tom contacted more than one hundred times with lots of different attorneys. Every time plaintiff contacting with attorneys plaintiff had to tear the wound that defendants did, once and once again showed to attorneys, total more than one hundred times. The wound in plaintiff's heart kept bleeding and bleeding, that's such cruelty and the pain is unbearable, caused plaintiff's long term physical and mental harm. Defendants maliciously and unlawfully destroyed plaintiff's rest of life. Some of attorneys were afraid to challenge MGM, plus plaintiff's gaming case and unemployment case were both ongoing, Plaintiff doesn't have money to pay for the legal fee, so Plaintiff had to learn how to do all the paperwork. Plaintiff spent much time and a lot money for learning, searching and collecting. Because of the hard work and high emotional stress, plaintiff's health is getting worse, coughing, headaches, fevers and nightmares ...Plaintiff had to take sick off from work. Plaintiff is currently working part time at Air Force Base Commissary. Plaintiff passed background check, started the job in February 2024, making about $19.20 per hour. Plaintiff usually work 9 to 15 hours every week, depends on business. Plaintiff had no health insurance, had no money to pay for visiting medical staff. Plaintiff was depressed, multiple times, plaintiff wanted to give up her life, plaintiff felt she couldn't bear so much financial stress emotional stress and reputational stress.

22.  Because all these criminal things defendants did to plaintiff, plaintiff has lost of self confidence, irritated, and unable to trust anyone. Plaintiff and Tom couldn't get along well used to be. Because of emotional distress, financial hardship and physically and mentally distress, Plaintiff is so depressed and stressed, lost the interest to be happy, can't focus on any joyful moments, those bad things from defendants always hurt plaintiff every second. Plaintiff feels like a part of plaintiff life has died—no longer trust, no longer find happiness, and no longer feel at peace. Plaintiff was crying all day and whole night, couldn't help it. But next morning Plaintiff had to swipe tears to keep fighting for her rights.

23.  DETR referee hearing was continued to July 29th 2024. The Unemployment Referee hearing was taken by Phone. In this hearing, Plaintiff's witness David Mirshak (a former Aria poker room supervisor) was at plaintiff's home, he testified that there was no training or

policy prohibiting pre-tipping. David Mirshak, also testified that Aria poker room management

had allowed dealers to take pre tips from the pot. David Mirshak told plaintiff , he did the

same took pre tip from pot, when he was needed to deal on a table, because some times Aria

poker room was short on dealers.

24.    As stated in 23, the appeal referee reversed DETR ruling and decided plaintiff

was entitled to her unemployment benefits claim, plaintiff did no misconduct. In DETR referee

hearing,  Ryan Kirk appeared and knowingly provided false testimony, falsely accusing plaintiff

of " theft".  Defendants and their legal representative have known or should have known

fabrication and defamation happened,  defendants still purposely abused process and

maliciously prosecuted, appealed to unemployment board view on the last day of time

limitation. Unexpectedly, In  November 2024, the DETR board view arbitrarily reversed the

decision the referee made. Defendants successfully misled  DETR again, after the decision,

DETR sent a letter to plaintiff asked plaintiff to pay back all the benefits total  $19,784.00.

Plaintiff drowned in the water again couldn't breathe, plaintiff couldn't eat couldn't sleep, but

Plaintiff had to  keep fighting, fighting for her, also fighting for the justice  in The United States.

The United States is a country governed by the  law, a place that many around the world aspire

to live in because of its commitment to justice and fairness. A nation built on principles of

democracy and legal protection should not tolerate such egregious actions. Plaintiff had to

spend more money, bear more emotional distress and financial hardship,  for appealing  to

Judicial review. The case is still pending.

25,    It was after Plaintiff got all the documents from NGCB on about or October 28th,

2024, Plaintiff found out more and more clear signs of fabrication. In the"incident file full report"

from Defendants, all signature sign spots in this report are  empty , nobody signed name on .

those papers. The report was"Printed: 7/26/2023  5:41:53pm"( see Exhibit(11)). The report from

defendants shows  14 videos details,  shows plaintiff took tips from pots and players. They

were inconsistent and confused. But on Aug 17th 2023 when I first day backed to work,  the

gaming agent Tyler Boelter and surveillance Beau all said 7 times about $200, Also in the

gaming hearing held on April 23rd, 2024, when I watched the video of table 20, I told the hearing officer Augusta Massy, I was not on the table 20 on 10:08pm July 17th, 2023, therefore, the videos might have been tampered. I got off from table 23 on 3:30am. However the hearing officer Augusta Massy didn't show me the incident report file from Aria. The incident report falsely shows the time details on every game on my last working day July 17th, 2023 through July18th 2023. From these, possibly, defendants submitted the document evidence after hearing, plaintiff didn't have the chance to see the evidence, Plaintiff had no chance to impeach them. Defendants abused the process, Misled the NGCB , Causing Plaintiff not to get her license back. Defendants did deliberately and maliciously .

26.    In defendants' incident report , the details falsely showed plaintiff was on table 7 pre tip game and table 8. However, table 7 and table 8 are on the opposite side of the room from table 23. Plaintiff got off from table 23, before table 1, had not been to table 7 or table 8 after table 1. From the poker room draft picture(Exhibit (10) one can see. When the graveyard manager Eda went to table 23 to ask plaintiff " Jian you want to go or stay", plaintiff hesitated for seconds, plaintiff was thinking: "plaintiff don't have to leave early , plaintiff's China trip starts the next morning, plus plaintiff have chance go to table1, but table 1 isn't going at this time, so I (plaintiff)choose to go". Table 1 is the high Roller table, usually it's the best table to make tips in this poker room, nobody wants to miss this table, but table 1 wasn't going at that time, that's the reason plaintiff left the Aria poker room after table 23 at about 3:30am on July 18th, 2023. Plaintiff had never been the opposite side table 7and table 8, plus Ryan Kirk texted plaintiff on August 18th, 2023, he said plaintiff's last incident (took pre tip from pot) day is July 17th, 2023, but Defendants submitted the video of table 7 as my last incident table happened on July 18th, 2023, this is wrong and inconsistent. In the Defendants' evidence incident report details falsely shows, I worked on the table 8 from 3:00am to 3:30am, this is impossible. Too unreasonable and contradictory. Defendants refused to show plaintiff any videos till the day the gaming hearing date April 23rd 2024. On the gaming hearing April 23rd,2024, the hearing officer Augusta Massey just let plaintiff and Plaintiff's witness Tom see three of them,

Plaintiff found something wrong in the Video of table 20 right away. On plaintiff's table 20, what really happened is:  The first hand finished to the river, plaintiff dealt the last card, the river card(it did not end on the turn as the video shows ). After  the river card was out,  after action finished, at least two players compared their hands. Plaintiff read the hands for them ,  Seat 4 player(plaintiff didn't know his name then, he played  a lot in Aria poker room during the 2023 World Series of Poker)  won both boards, won the whole pot, He then  changed his mind, told plaintiff : "Dealer, I don't do pre tip",  I gave back the $20, then he tipped plaintiff $1 instead. The second hand the same player in seat 4,  won again, he tipped me another dollar.  Usually the seat 4 player didn't tip dealers. When the seat 4 player changed his mind, asked for the pre tip back after he won the pot,  I felt he took a shot on me  cheated me. I didn't want to argue with him, so just gave the $20 pre tip  back to him. The player knew the $20 was pre tip, why would he  complain about me "stealing"?why  didn't he complain right away instead of waiting for couple days later? Why he still kept tipping me if he thought I was a "thief"? Till today, there is  no  complaint statement from the player,  no evidence about the complaint. From all of this, the fabrication of the false complaint is very clear.  I highly suspect defendants fabricated the story of a player complaining.

27.  The incident report documents evidence from Defendants shows,  Defendants prepared plaintiff's "theft" documents on July 19th, 2023, but defendants called Gaming Control Board a week later on July 26th 2023. The defendants didn't do due process, What did defendants do in those 7days. The documents report evidence also shows , it was "Printed: 7/26/2023 5:41:53pm". The statement from the gaming  agent Robert Lange said I took money from pot 13 times for a  total of about $235. After plaintiff counted , the incident report from Defendants shows 14 times and 14 videos ,the total amount  is not 235.  They are inconsistent again and once again. On Aug 17th 2023 plaintiff's first day backed to work from 4 weeks vacation ,  the gaming agent Tyler Boelter and surveillance Beau all said "7 times total about $200".....it's unreasonable and contradictory again....From all these, there were clear signs of fabrication and tampering. I suspect some of the incident report document evidence and some

of videos evidence, like table 20 and table 7 have been tampered, also the story about the player complaining is not true. The reckless and inaccurate documentation provided by defendants has made severe consequences beyond legal technicalities. These false records have damaged my professional reputation, misrepresented my integrity, and exacerbated my emotional distress. The defendants' failure to maintain accurate records demonstrates a reckless disregard for the truth and has caused irreparable harm to my career and well-being.

28.   In order to obtain evidence to prove other poker dealers were doing the same as me taking tip from the pot on Bomb Pot "PRE TIP" game, during the game still in progress, plaintiff asked a Poker player to take a video for me on May 14th 2024. The player for some reason didn't do the video. On May 21st 2024, Aria poker room dealers received a poker policy(attached marked as Exhibit (13) from Aria management , But the policy shows in effect on "May 6, 2024".

29.  Plaintiff have substantial reasons to believe that the poker policy enacted by Aria casino in May 6, 2024 specifically against plaintiff to prevent further recording.

30. Defendants didn't post the written policy until 9 months after plaintiff termination and until plaintiff asked a guest to record Aria dealers taking a tip from the pot.

31, The policy was introduced to the dealer on May 21st ,2024, however, the Aria poker room set the policy effective day is " May 6, 2024", I  suspect defendants fabricated the policy effective day, to cover up the fact, to prevent the future video recording after they knew Plaintiff wanted to record videos as evidence. On December 17th, 2024, plaintiff went to Aria poker room to record the video, defendants employees threatened plaintiff  to delete the video.  All this showing, defendants  prevent plaintiff from recording any video in the poker room, defendants don't want to  plaintiff get any video evidence from Aria poker room, defendants tried to cover their unlawful acts.

32.  Aria poker room dealers continued to take tips from the pot even after the policy took effect, the policy breaking labor laws (NRS 613.330, NRS 613.160).

33. Defendants' house poker policy (attached marked as Exhibit (13)) is violating the law NRS 613.330, NRS 613.160.

34. On December 16th 2024, Plaintiff was told, Aria poker room dealers were still taking the pre tip out from the pot like before, like Plaintiff did. This despite having a policy that went to in effect on " May 6,2024". However, the Aria poker room dealers were still doing the same, taking the pre tip from the pot, that can be seen and proved from Exhibit (2). They still are doing the same just like before. Plaintiff was very surprised, She decided go to Aria poker room to get a record. On December 17th 2024, at about 9:31 p.m, Plaintiff started to record a video in the Aria poker room, the video shows an Aria white women dealer taking pre tip from pot while the game was still in progress. The Defendants' poker policy says: "A tip cannot be taken by a Dealer out of a pot prior to the pot being pushed to the winner player." " Players are not permitted to instruct a dealer to take a tip out of a pot they did not win." (see Exhibit (13)), can tell, the defendants made a unlawful poker policy to prevent plaintiff from recording video as evidence. Instead of correcting their wrongful action, the defendants have doubled down by implementing an unlawful policy to suppress evidence, further violating labor laws and obstructing justice.

35. After defendants discovered plaintiff took video on December 17th 2024, defendants threatened plaintiff to delete all the recording. Such recording is the key evidence for Aria dealer taking tips from the pot, it is the evidence to prove plaintiff was the only one that got fired by doing the same as other dealers were doing. Also it's the evidence showing the screenshots evidence from plaintiff's video are so clear, however the screenshots evidence from defendants were so dark and of poor resolution. Defendants poker room employees, Including Aria poker room supervisor and management, conspired to intimidated , coerced, and unlawfully oppressed to force plaintiff to delete the video. This sudden and highly public intimidation caused plaintiff severe humiliation, distress, and reputational harm. Plaintiff was treated as if she had engaged in misconduct for poker room guests and employees. The guests and defendants' employees thought plaintiff was wrongdoing or unlawful doing.

Plaintiff was feeling threatened and unsafe,  Plaintiff complied and deleted the video. Plaintiff worked in the Aria poker room almost 5 years, during the time plaintiff worked there, guests were free to use phone in the Aria poker room. At other pokers room in Las Vegas, guests are free to use phone. However, defendants conspired to  intimidate and coerce plaintiff, preventing plaintiff  from keep recording and using  the video evidence in a legal case.  Plaintiff regreted she deleted the video. Plaintiff should have never complied with the intimidation from defendants,Plaintiff didn't know the defendants broke laws, she was shaking then deleted the video. Finally, plaintiff found it from" recently deleted " on her phone. But defendants already broke the laws , already cost plaintiff's emotional distress and reputational damages.

36.  On January 9th 2025,  Plaintiff and Tom  viewed the  videos which were submitted by defendants to  NGCB. Said videos were used for part of the evidence for the hearing held on April 23rd, 2024 at NGCB office. However, plaintiff and Tom only viewed three of 13 videos at the hearing. The videos are out of context, didn't show  other dealers how they collected the pre tips, defendants only selected to disclose how the plaintiff collected pre tips. Plaintiff suspected the video of table 20 was something wrong at the hearing. After this hearing , NGCB kept the decision. Plaintiff had to appeal, hired an attorney, plaintiff's attorney demanded a copy of the video evidence from Aria, but  NGCB refused.  NGCB allowed plaintiff and Tom view videos in their office, that's why plaintiff and Tom went to NGCB to view videos. Plaintiff and Tom were requested to put their phones away,  they couldn't use phone to take any pictures or videos from the defendants' evidence videos. A gaming tech agent,  named Ricardo Lopez,  was only able to control the folders/files in the computer. Plaintiff and Tom have been told that the tech agent had no knowledge of plaintiff's case, he was not allowed to answer any questions about the videos… Plaintiff had lots questions for the strict requirements from gaming.

37.  On January 9th 2025, after plaintiff viewed all the videos a total of 20 videos in NGCB office located at 7 state of  Nevada way, Las Vegas. Plaintiff suspect that more videos had been tampered . For example, the two videos of  table 4,  Plaintiff have never been this

table on July17th 2023. Plaintiff remember the woman player in seat one on table 4, after met her on table 4, plaintiff met the woman player again on table 20 couple days later, the same game, she was also on seat one, Plaintiff said hi to her. Also the video of table 9 on July 15th 2023, is 1,3 Bomb Pot pre tip, 1,3 game doing Bomb Pot pre tip is very rare. In plaintiff's memory she only dealt once in her poker dealing life, plaintiff has never dealt this game in the summer of 2023, ….. On April 23rd, 2024, in the gaming hearing, Defendants submitted 13 videos, the incident report shows 14 videos. Surprisingly, I and Tom saw 20 videos at NGCB office on January 9th, 2025. The number of videos is inconsistent.

38. The 20 videos as evidence from Defendants have been stored separately in 6 different folders with different paths. I asked the gaming tech agent Ricardo Lopez, why did he store the 20 videos in 6 different folders with different paths, this is very strange. The tech gaming agent Ricardo Lopez told plaintiff and Tom: "This was the way Aria submitted, I stored the videos the original way in the computer, I didn't make any change." As the tech gaming agent Ricardo Lopez stated, Defendants storing 20 evidence videos in 6 separate folders with different paths is unusual and raises serious questions concerning the video evidence might be tampered , selective disclosure, and procedural misconduct. Defendants stored the 20 videos separately in 6 different folders with different paths as the gaming tech agent Ricardo Lopez stated, can tell defendants submitted the entire 20 videos together to NGCB. Plaintiff believe defendants may have re-edited the video of July 17th 2023 table 20. On April 23rd 2024, plaintiff and Tom saw it in the gaming hearing, it was not clear but grainy, also the video wasn't going smooth, however, right now the video of table 20 is very clear and smooth. Furthermore , Plaintiff and Tom found out: Some part of the video evidence submitted by defendants display artificial smearing effects, this raises concerns about possible video manipulation or tampering; Some of the 20 videos evidence provided by defendants, some part of video exhibit noticeable frames drops, making the video appear choppy and inconsistent, raising concerns about potential tampering or video manipulation;

Some of the 20 videos evidence provided Defendants, are video screenshots;   Plus some had different playback speeds in the same  video; Plus at least 2 videos have two different timestamps (different time and different font styles).....About some videos having two different timestamps, below is the analysis from **AI ChatGPT:**

39.  _"If a single video contains two different timestamps, it is strong evidence that the video has been altered, manipulated, or tampered with. In legal and forensic analysis, timestamp discrepancies are a major red flag indicating potential evidence fabrication or editing.

**Why Two Different Timestamps Strongly Indicate Tampering**

A legitimate, unaltered video should have:

1.      **Consistent On-Screen Timestamp** – The timestamp displayed in the video should match the actual recording time.

2.      **Matching Metadata Timestamps** – The file's creation, modification, and access times should align with the video content.

However, if a single video shows two different timestamps, it suggests:

**1. The Video Was Edited or Spliced**

•       The most likely explanation is that two separate recordings were stitched together, but the timestamps were not properly synchronized.

•       Example: The casino may have removed or replaced sections of the video to alter the sequence of events while failing to adjust the timestamps properly.

**2. The Video Was Re-Encoded or Processed**

•       If a video is processed through editing software or re-encoded, the metadata timestamps may reflect the editing date instead of the original recording time.

•       If the on-screen timestamp remains unchanged while the metadata timestamps differ, this suggests video modification.

**3. The Surveillance System's Timestamps Were Manually Adjusted**

• If a casino intentionally altered the system clock or re-recorded video playback, different timestamps may appear.

• This could be an attempt to alter the timeline or obscure key events.

**4. The Casino Inserted or Overlaid Footage**

• If two different timestamps exist within a continuous recording, it could indicate the insertion of altered video frames or an overlay of fake timestamps.

• This is a common tactic used to replace incriminating footage with falsified recordings.

**Legal Implications of Two Different Timestamps**

In legal proceedings, inconsistent timestamps in a video make it unreliable as evidence. You can use this to:

☑ Challenge the authenticity of the video and move to exclude it from evidence.

☑ Request forensic analysis to prove tampering or manipulation.

☑ Demand the original, unmodified surveillance footage directly from the casino's security system."

☑ Accuse the casino of evidence tampering (Obstruction of Justice, 18 U.S.C. § 1512) if the video was intentionally altered."

About the same video has different playback speeds, below is the analysis from **AI (Artificial Intelligence):**

40. **"What Does It Mean When the Same Video Has Different Playback Speeds?**

If the same video plays at different speeds in different instances, it could indicate several potential issues, including video tampering, playback device variations, or synchronization problems. Below are the possible explanations:

1. Video Tampering or Manipulation

☑ Intentional Speed Alteration (Evidence Tampering)

· If certain sections of the video appear to play faster or slower, it is possible that someone has manipulated the playback speed using video editing software.

· Potential Intentions Behind Speed Manipulation:

· Speeding up the video → To hide details or make certain actions difficult to analyze.

· Slowing down the video → To exaggerate movements or make an action appear more deliberate or suspicious.

· How to Detect It:

· Compare timecodes across different versions of the video—look for inconsistencies or jumps.

· Analyze the metadata of the video file to check for signs of editing.

· Perform a frame-by-frame synchronization check across different copies of the video.

☑ Frame Rate Manipulation (Altered FPS)

· If the original video was recorded at 30 FPS (frames per second), but the modified version is at 60 FPS or 15 FPS, it can result in inconsistent movement speeds.

· Why Frame Rate Manipulation Might Occur:

· To change how actions appear in the footage (e.g., making a movement seem faster or slower).

- To conceal or fabricate certain events by altering how frames are displayed.

- **How to Detect It:**

- Use video analysis tools (such as FFmpeg or Mediainfo) to verify if the original and modified versions have different frame rates.

**2. Playback Device or Software Differences**

☑ **Different Video Players Handle Playback Differently**

- Some video players (e.g., VLC Media Player, Windows Media Player, QuickTime) may interpret frame rates differently, causing minor speed variations.

- Some players automatically adjust playback speed for high-frame-rate videos.

- However, this usually affects the entire video, not just certain segments.

☑ **Hardware Performance Issues**

- If a computer or playback device struggles to process high-resolution video, it might play the video at an inconsistent speed.

- Corrupted or incomplete video files can cause playback errors, making it seem like the video is running at different speeds.

**3. Synchronization Issues (Signs of Editing)**

☑ **Timecode Discrepancies**

- Surveillance footage usually has a timestamp, and any differences in playback speed could indicate that:

- The timestamp was altered to hide video modifications.

- Sections of the video were removed or inserted, leading to irregular speed variations.

**4. Implications for Casino Surveillance Footage**

💡 **If a casino's surveillance video exhibits inconsistent playback speeds, it could indicate:**

•    **Deliberate speeding up or slowing down of certain sections to misrepresent events.**

•    **Edits made to remove or alter key evidence while maintaining the illusion of continuity.**

•    **Frame rate adjustments to distort the way movements appear in the footage.**

**Conclusion**

•    **If the same video plays at different speeds in different instances, it is highly likely that the video has been altered.**

•    **If this occurs in a legal or surveillance context (such as casino footage), it may indicate deliberate evidence tampering.**

•    **Technical analysis (frame-by-frame review, metadata inspection, and timecode verification) can help detect whether a video has been manipulated."**

41.    ChatGPT also says:    "AI-based forensic analysis is widely accepted in legal, forensic, and business fields, where objective data evaluation is critical. Courts have previously considered AI-assisted tools in video analysis, document authentication, and pattern recognition. The AI analysis in this case follows similar methodologies, ensuring accuracy and impartiality in assessing the evidence presented." "The AI-generated analysis utilized in this case is based on factual data, logical reasoning, and established legal principles. Unlike human interpretation, which may be influenced by personal bias, AI evaluates evidence using structured algorithms, ensuring objectivity and consistency. The conclusions drawn are derived

from measurable patterns in data, minimizing the risk of subjective distortion or

misrepresentation."

42. Except the video evidence, from the incident report document evidence, also can

see lots of spots showing Fabrication, such as printed time" 7/26/2023", empty signature sign

spots, and much more in the videos details. For example the incident report details falsely

showed: plaintiff worked 9 downs straight 4.5 hrs no break; Plaintiff worked double downs on

one table twice, including table 21 and table 23 for one hour each; July 17th 2023 on table 20,

defendants fabricated plaintiff took $25, was different as before Defendants fabricated plaintiff

took $15. Defendants falsely put plaintiff on table 20 at the time "7-17-2023 22:08:21".

Plaintiff worked on this table about 1am on July18th 2023. Defendants put wrong time on table

20, so, all tables following table 20 were at false time, table 20 table 21 table 22 and table 23,

were all at the wrong time. Plaintiff had never been other side of the room table 7 or table 8.

Before table 20, the incident report from defendants falsely showed : 21:01 to 21:30 plaintiff

was working on table 6, 21:31 to 22:04, plaintiff was working on table 19. Regarding plaintiff's

experience in Aria poker room, table 6 usually was put as first table of last string, like

6-22-23-24, or 6-23-24, table 6 followed by table 19, was unusual. Plaintiff suspect the video

of table 6 maybe also false. About table 19, plaintiff didn't work on table 20 at 22:08 July 17th,

2023, Plaintiff didn't work on the table 19 at 21:31 to 22:04 on July 17th, 2023 either. Table 21,

table 22, table 23, table 7and table 8, are all wrong. Defendants submitted more tampered

videos once again after the gaming hearing held on April 23rd 2024. From accusing plaintiff of

taking chips from the pot changed to take chips from rake; accusing plaintiff of cheating

players changed to cheat employer; from 7 times added to 13 times; from 13 videos added to

14 videos, from 14 videos added to 20 videos, total amount from $200 to $235..... Fabrication

and tampering had been a lot.

//

//

//

# ALLEGATIONS

43.  Comes Now Plaintiff herein Jian Hu under the penalty of perjury for her best knowledge and belief re-allege all the facts stated in the statement of facts above and further allege that defendants the following allegations:

44.  Plaintiff Jian Hu was a professional poker dealer employed at Aria Casino &Hotel in Las Vegas.

45.  On or about July 26th, 2023,  Defendants falsely reported plaintiff was "THEFT" to Nevada Gaming Control Board, misled Nevada Gaming Control Board to the revocation of plaintiff's gaming card and termination from multiple casino jobs.

46.   Plaintiff asserts that Defendants, including poker room  management, security personnel, MGM  INTERNATIONAL HR, and legal representatives or other employees of defendants, fabricated evidence, manipulated surveillance footage, and conspired to falsely accuse Plaintiff, defamed plaintiff , intimidated and coerced plaintiff and her witness Thomas Sakowych , leading to significant financial damages, body damages, emotional distress and reputational damages, destroyed plaintiff's rest of life.

47. The accusations against Plaintiff were based on fabricated story of player complaint, fraudulent documents, tampered videos.

48.   Plaintiff asserts that the defendants tampered multiple surveillance videos, and fabricated documents  in legal proceedings.

49.  Defendants defamed  plaintiff base on fabricated story of player complaining, fraudulent documents,  tampered video footage, and false testimony by Defendants.

50. Plaintiff further contends that Defendants poker room operation director Ryan  Kirk, knowingly provided false testimony during a DETR appeal referee hearing, falsely accusing Plaintiff as theft while fully aware that the alleged action was the lawful acceptance of dealer tip.

51. Plaintiff believes that her termination is wrongful and malicious. The false accusation were a direct act of retaliation, following Plaintiff's refusal of a day shift position, refusal of advances from defendants' management.

52. After rejecting the manager's inappropriate advances, Plaintiff was subjected to hostility, unfair scrutiny, and ultimately, false accusations that led to malicious termination and the loss of her gaming card, loss of the opportunity to work in casino industry.

53. Plaintiff later sought unemployment benefits, DETR initially rejected plaintiff unemployment benefits claim.

54. Plaintiff appealed to DETR for referee hearing, in the referee appeal hearing, the referee ruled in favor of plaintiff, in referee decision ruled plaintiff was entitled to unemployment benefits, plaintiff did no misconduct.

55. However, Defendants maliciously appealed referee's decision knowing what fabrication and defamation defendants did. DETR board of review reversed referee's decision without hearing process, recklessly ruled despite being aware that defendants' accusations against plaintiff were based on false evidence. Subsequently plaintiff received a wrongful overpayment notice from Nevada's Employment Security Division, demanding plaintiff pay back unemployment benefits of $19,784. Plaintiff timely filed an appeal to Nevada 8th District Court for a judicial review. As of today February 17th, 2025, judicial review is still pending in Nevada District Court.

56. On February 24th, 2024 and January 17th 2025, defendants' personnel manager intimidated and coerced plaintiff's witness Tom twice, caused plaintiff and her witness Tom income damages and serious emotion distress. Defendants' actions in coercing Plaintiff's witness constitute witness tampering, obstruction of justice, and retaliation in violation of federal laws and Nevada state laws.

57. On December 17th 2024, Plaintiff legally recorded video inside Aria poker room capturing potential evidence regarding the case. However, the defendants threatened, intimidated, and coerced plaintiff, forced Plaintiff to delete her video evidence.

58. Defendants' action in coercing Plaintiff to delete evidence constitute witness tampering, obstructed plaintiff to obtain and collect evidence to prove defendants wrong doing, such act is malicious and oppressive, destruction of evidence and coercion & destruction of property in violation of federal and Nevada state laws.Rather than acting in good faith, the defendants have conspired in retaliatory and obstructive conduct, further strengthening the case plaintiff against defendants.

59. Defendants' multiple departments including poker room management, security, personnel managers, surveillance staff, legal counsel, and MGM international HR, conspired to fabricate evidence tampered videos, intimidated plaintiff and her witnesses and manipulated regulatory systems to cover up their unlawful doing and prevent Plaintiff from seeking justice. Defendants used legal technicalities and procedural delays to exhaust and financially drain individuals fighting for justice.

60. On May 14, 2024, Plaintiff asked a player to record video inside poker room of Aria casino, but for some reason, the player failed to do.

61. On May 21st, 2024 , defendants' employee received a poker policy from Aria poker room. The policy effective date is showing on " May 6, 2024". It was apparent that defendants tried to cover the truth preventing plaintiff from further recording video evidence.

62. This manipulation of policy timelines constitutes fraud, obstruction of justice, and bad faith business practices, as defendants intentionally misrepresented the effective date of its policy to cover up its retaliatory actions against Plaintiff. Also, the defendants made a unlawful poker policy to prevent plaintiff from recording video as evidence. Instead of correcting their wrongful action, the defendants have doubled down by implementing an unlawful policy to suppress evidence, defendants have compounded its legal violations by introducing a policy that not only contravenes labor of laws, but also deliberately suppresses evidence critical to plaintiff's case, further violating federal laws and obstructing justice.

63. Defendants submitted 13 videos as evidence in the gaming hearing held on April 23rd, 2023. Defendants submitted 20 videos evidence after the gaming hearing. Defendants

submitted multiple suspicious tampering black screenshots evidence to DETR hearing, constitute abuse of power abuse of procedures and obstruction of justice in violation of federal and Nevada state laws.

64. The 20 video evidence defendants submitted to NGCB, some spots of video showing artificial smearing effects, this raises concerns about possibly video manipulation or tampering;   Some parts of a video exhibit noticeable frames drops, making the video appear choppy and inconsistent, raising concerns about potential tampering or video manipulation; Some of the 20 videos evidence, are video screenshots;   Plus some videos have different playback speeds in the same video; Plus at least 2 videos have  two different timestamps (different time, different font styles and different format ), Plus some videos of the 20 videos showing tables that plaintiff had never been at that time......Plaintiff suspect the defendants have tampered with lots of videos.

65. Plaintiff alleges that Defendants engaged in a pattern of internal collusion involving casino poker room management, MGM International Human Resources, personnel management, security personnel, and surveillance staff and legal representatives or other MGM employees,  they conspired to fabricate evidence, intimidate Plaintiff and her witnesses and manipulate regulatory processes to suppress the truth.The Defendant's actions in this case are not isolated incidents but rather part of a broader pattern of misconduct. The blatant disregard for legal and ethical standards demonstrated by the defendants,  suggests that plaintiff may not be the first victim of such unlawful practices. Given the reckless and systematic nature of these violations, it is highly likely that other individuals may have been similarly subjected to wrongful treatment, including evidence tampering, wrongful termination, and retaliatory actions. This repeated pattern of abuse necessitates closer scrutiny by both this court and relevant regulatory authorities."

66. Defendants' conduct reflects systematic corruption and abuse of power, akin to corporate mafia-style tactics, where multiple departments conspired to protect the defendants' financial interests at the expense of individual rights and legal integrity.

67. Plaintiff has suffered serious emotional distress, reputational harm, loss of employment opportunities, and financial hardship due to Defendants' fraudulent and retaliatory actions. As a direct result of the Defendants' egregious and malicious conduct, Plaintiff suffered extreme emotional distress, severe anxiety, and profound psychological trauma. The relentless harassment, unlawful termination, and public humiliation orchestrated by mutual departments of defendants' pushed plaintiff to a state of utter despair, where Plaintiff struggled with thoughts of hopelessness and contemplated self - harm. The defendants' actions not only devastated plaintiff's career and reputation but also led her to a profound deterioration of her mental health, necessitating professional treatments.

68. The defendants are engaging in a clear pattern of illegallies from false accusations to fabricate evidence to tamper videos, to intimidate witnesses, to enact illegal policy aimed at suppressing evidence to intimidate plaintiff collecting evidence...Such actions could lead to severe legal consequences.Defendants' actions violated multiple federal and state laws, including:

69. Obstruction of Justice (18 U.S.C. § 1503) – By manipulating surveillance footage, coercing Plaintiff to delete evidence, and fraudulently backdating casino policy .

70. Falsification of Records (18 U.S.C. § 1519) – By presenting fabricated documents and altered video evidence.

71. Defamation, NRS 200.510, Any written, printed, or published false statement that exposes a person to public hatred, contempt, or damages plaintiff's profession is considered libel. NRS 200.550 Any false and malicious spoken statement that accuses plaintiff's a crime, misconduct, or immoral behavior is considered slander.

72. Witness Tampering & Retaliation (18 U.S.C. § 1512) – By intimidating Plaintiff and witnesses, forcing the deletion of evidence, and using legal processes to punish Plaintiff for asserting their rights.

73. False Imprisonment (NRS 200.460) – By stopping and coercing Plaintiff into deleting video footage under threat.

74.      Coercion & Destruction of Property (NRS 205.274) – By unlawfully forcing Plaintiff to erase digital evidence.

75.      Unfair Gaming Practices (NRS 463.140 & NRS 463.170) – By engaging in deceptive, retaliatory, and fraudulent actions in violation of Nevada gaming laws.

76.    Plaintiff seeks full legal recourse, including compensatory and emotional distress, reputational damages and punitive damages, to hold Defendants accountable for their pattern of fraudulent misconduct, illegal retaliation, and willful disregard for Plaintiff's rights. Plaintiff recommend revocation or suspending of  Defendants' gaming license due to severe internal violations and significant deviations from regulatory compliance, rendering them unfit for continued operation. Immediate internal reforms are necessary for Defenders to restore lawful business practices.

## Cause of Action – Lawsuit Against defendants

77.    This lawsuit is filed against defendants for engaging in fraudulent misconduct, including falsifying evidence, video tampering, malicious dismissal , Collusion to Frame plaintiff, defamation, and witness intimidation, hostile working environment,psychological coercion and emotional exploitation,   sexual harassment retaliation and discrimination, Spoliation of Evidence & Obstruction of Justice…which resulted in the unlawful revocation of the plaintiff's gaming license and loss of employment. The plaintiff seeks damages for financial losses, emotional distress, and reputational harm caused by the defendants unlawful actions.

## THE FIRST CAUSE OF ACTION: DEFAMATION (LIBEL & SLANDER) - FALSE ACCUSATIONS OF THEFT

**Facts**

78      Defendants' manager, Aria poker room poker operation director Ryan Kirk, falsely reported theft to GCB, falsely accused plaintiff of theft and falsely testified in DETR

referee hearing, knowing the allegations were false based on fabricated evidence, including tampering of many of surveillance videos and the fabrication of employee incident report.

79.    Defendants communicated these false accusations to third parties, including the NGCB, the plaintiff's friends, former coworkers, Nevada gaming commission and DETR, which led to severe reputational damages.

80.    Defendants knew their statements and accusations against plaintiff were false, but defendants made them with malice and oppression .

**2.    The plaintiff suffered:**

81.    Lost of three jobs in 5 months, gaming license revocation, and long term damages to professional reputation and emotional stress.

82.    Severe reputational damage, financial hardship, and emotional distress. The defendants conspired to systematically and unlawfully infringe upon the plaintiff's fundamental rights, constituting a severe violation of human rights.

83.    The defendants' acts have caused plaintiff permanent, irreparable harm including but not limited to specific injuries, such as physical harm, psychological trauma, reputational damageseconomic loss…

84.    As a direct result of the defendants'continuous oppressive and abusive conduct, the plaintiff has suffered mental and physical illness. Symptoms include recurrent distressing memories, nightmares, severe anxiety, and avoidance of stimuli associated with the traumatic events. These symptoms have significantly impaired the plaintiff's daily life and work capacity, leading to an inability to continue employment at the casino. The plaintiff has sought medical assistance and is undergoing psychological therapy, those symptoms align with Post-Traumatic Stress Disorder (PTSD). The plaintiff's PTSD is directly attributable to the defendants' actions.

**3.    Legal Basis:**

**A    Nevada State Law:**

85.  NRS 200.510 – Defamation is illegal when knowingly false statements are made that damage another person's reputation.Defamation per se applies when false accusations involve criminal activity (theft), professional misconduct, or dishonesty, eliminating the need to prove direct financial harm.

**B       Federal Law:**

86.  First Amendment considerations – Defamation claims must demonstrate actual malice when public agencies (like NGCB) are involved (New York Times Co. v. Sullivan, 376 U.S. 254, 1964).

**C.       law about punitive damages**

87.  NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

88.       Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

89.       The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

90.  Case law:  TXO Production Corp. v. Alliance Resources Corp. (1993)

State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

91.  4.      **Damages Sought:**

A. Loss of income

(1) Currently:         $70,000/year * 5 year =$350,000.00

(2) Future:           $60,000/year * 25 years =$1,500,000.00

(3) Social security damage:   1500 * 12 * 40  =$720,000.00

B.   Body health damages:           $800,000.00

C.   Emotional and psychological distress:   $25,000,000.00

D.   Reputational damages:           $40,000,000.00

E.   Punitive and damages:           $580,000,000.00

Total pray for :          .$648,370,000.00

## THE SECOND CAUSE OF ACTION: FRAUD, FALSIFIED EVIDENCE, VIDEOS TAMPERING AND INTENTIONAL MISREPRESENTATION

**1,    Facts:**

92.     Defendants knowingly altered many surveillance videos , fabricated evidence of misconduct against the plaintiff.

93.     Defendants knowingly submitted several times falsified records to Nevada Gaming Control Board and Nevada Department of Unemployment, Training and Rehabilitation to justify malicious termination.

94.     Defendants concealed or destroyed exculpatory evidence, preventing a fair investigation into the incident.

95.     Plaintiff requested key evidence including working time card and original videos, Defendants' poker room and security department rejected plaintiff's request.

96.     Revocation of plaintiff's gaming license due to fraudulent accusations.

97     Long term loss of career opportunities within the gaming industry.

**2.    As a result, the plaintiff suffered:**

98.     Severe reputational damage, financial hardship, and emotional distress. The defendants conspired to systematically and unlawfully infringe upon the plaintiff's fundamental rights, constituting a severe violation of human rights.

99.     The defendants' actions have inflicted permanent, irreparable harm upon the plaintiff, including but not limited to specific injuries, such as health damages, physical harm, psychological trauma, reputational damages and economic stress.

100.     As a direct result of the defendants' continuous oppressive and abusive conduct, the plaintiff has suffered mental and physical illness. Symptoms include recurrent distressing memories, nightmares, severe anxiety, and avoidance of stimuli associated with the traumatic events. These symptoms have significantly impaired the plaintiff's daily life and work

capacity, leading to an inability to continue employment at the casino. The plaintiff has sought medical assistance and is undergoing psychological therapy, those symptoms aligning with Post-Traumatic Stress Disorder (PTSD). The plaintiff's PTSD is directly attributable to the defendants' actions.

**3.      Legal Basis ,**

101. In legal proceedings, fraud and intentional misrepresentation involving falsified evidence and video tampering are serious offenses under both federal and state laws.

**A      Federal Law:**

102      18 U.S.C. § 1519: This statute addresses the destruction, alteration, or falsification of records in federal investigations and bankruptcy. It states: "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States… shall be fined under this title, imprisoned not more than 20 years, or both."

103.      18 U.S.C. § 1001: This statute criminalizes knowingly and willfully falsifying, concealing, or covering up a material fact, or making false statements or representations in any matter within the jurisdiction of the federal government.

**B.      Nevada law:**

104.  In Nevada, the intentional destruction, alteration, or concealment of evidence is addressed under Nevada Revised Statutes (NRS) § 199.220. This statute criminalizes actions intended to impede legal proceedings or investigations by tampering with evidence. Key Provisions of NRS § 199.220:

105      Prohibited Actions: Willfully destroying, altering, erasing, obliterating, or concealing any book, paper, record, writing, instrument, or other item.

106      Intent Requirement: Such actions must be carried out with the intent to:

107      Conceal the commission of any felony.

108      Protect or conceal the identity of any person committing a felony.

109    Delay or hinder the administration of the law.

110    Prevent the production of evidence in any court or before any officer, tribunal, judge, or magistrate.

111.    Violations of NRS § 199.220 are classified as gross misdemeanors in Nevada. The potential penalties include:

112.    Up to 364 days in county jail.

113.    Fines up to $2,000.

**C. law about punitive damages**

114.    NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

115.    Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

116.    The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

117.    Case law:  TXO Production Corp. v. Alliance Resources Corp. (1993)

118.    State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

119.    **4, Damages Sought:**

A. Loss of employment and wages:

(1) Currently:          $70,000/year * 5 year =$350,000.00

(2) Future:          $60,000/year * 25 years =$1,500,000.00

(3) Social security damage:    2500 * 12 * 40  =$1,200,000.00

B   Body health damages:                $1,000,000.00

C.   Emotional and psychological distress:   $30,000,000.00

D.   Reputational damages:              $50,000,000.00

E.   Punitive damages:                $900,000,000.00

Total pray for :                    $984,100,000.00

**THE THIRD OF CAUSE OF ACTION: MALICIOUS DISMISSAL**

**Facts:**

120.    The defendants  intentionally and maliciously dismissed the plaintiff based on fabricated evidence and malicious false allegations.

121.    The dismissal was not the result of poor performance, misconduct, or any legitimate business reason but rather an act of retaliation and deliberate harm.

122.    The defendants  manipulated evidence, falsified records, and tampered with surveillance footage to create a pretext for terminating the plaintiff.

123.    The defendant actively blacklisted the plaintiff from future employment opportunities within the gaming industry, ensuring continued harm to their career.

124.    The defendant's malicious intent was evident in:

125.    The deliberate effort to damage the plaintiff's professional reputation.

126.    The fabrication of customer complaint and false accusations of theft.

127.    The suppression of exculpatory evidence that could have proven the plaintiff's innocence.

**As a result, the plaintiff suffered**:

128.    loss of three jobs in 5 months, Long term loss of career opportunities within the gaming industry.

129.    Revocation of their gaming license due to fraudulent accusations.

130.    Severe reputational damage, financial hardship, and emotional distress. The defendants conspired to systematically and unlawfully infringe upon the plaintiff's fundamental rights, constituting a severe violation of human rights.

131.    The defendants' actions have inflicted permanent, irreparable harm upon the plaintiff, including but not limited to specific injuries, such as physical harm, psychological trauma, economic loss, which cannot be fully remedied by monetary compensation.

132.    As a direct result of the defendants'continuous oppressive and abusive conduct, the plaintiff has suffered a lot of mental trauma, Symptoms include recurrent distressing memories, nightmares, severe anxiety, and avoidance of stimuli associated with the traumatic events. These symptoms have significantly impaired the plaintiff's daily life and work capacity, leading to an inability to continue employment at the casino. The plaintiff has sought medical assistance and is undergoing psychological therapy, those symptoms consistent with Post-Traumatic Stress Disorder (PTSD). The plaintiff's PTSD is directly attributable to the defendants' actions.

**3,    Legal Basis:**

**A.    Nevada State Law:**

133.    NRS 613.330 – Unlawful Employment Practices

Prohibits termination based on fraudulent or retaliatory motives.

134    NRS 613.333 – Retaliatory Discharge

135    Unlawful for employers to fire employees in retaliation for opposing malicious or illegal activities.

136    D'Angelo v. Gardner, 107 Nev. 704, 819 P.2d 206 (1991)

137.    Establishes that malicious termination violating public policy is legally actionable.

**B.     Federal Law:**

138.    42 U.S.C. § 1981 – Protection Against Employment Discrimination

Prohibits employment actions based on discriminatory or retaliatory motives.

139.    Title VII of the Civil Rights Act (42 U.S.C. § 2000e-3(a)) – Retaliation Prohibition

Prohibits employers from retaliating against employees who resist wrongful practices.

**C. law about punitive damages**

140.   NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

141.   Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

142.   The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

143.   Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

144.   State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

145.   **Damages Sought:**

Lost wages and future earnings

(1).    Currently:      $75,000/year * 5 years = $375,000.00

(2).    Future:      $60,000/year * 20years = $1200,000.00

(3).     Body health damages:            $2,000,000.00

(4).    Social security damages: 1800 *12* 35=$756,000.00

(5).    Legal cost:            $180,000.00

(6).    Emotional and psychological distress:   $5,600,000.00

(7).    Reputational damage:            $10,000,000.00

(8).    Punitive damages:            $120,000,000.00

The defendant's intentional fraud, malice, and deliberate destruction of the plaintiff's career warrant severe punitive damages.

Total Pray for:      $139,736,000.00

**THE FORTH CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT, PSYCHOLOGICAL COERCION, EMOTIONAL EXPLOITATION AND INTERFERING INCOME**

**1. Facts**

146.    The Defendants created and maintained an unlawful hostile work environment in which the Plaintiff was subjected to continuous psychological coercion, wage exploitation, and retaliatory treatment, making their employment conditions intolerable and abusive.

147.    The Defendants engaged in persistent and severe misconduct that created a hostile and oppressive work environment for the Plaintiff. The Plaintiff was systematically subjected to excessive work demands, intimidation, wage suppression, and emotional abuse, designed to exert control and strip them of their dignity and rights as an employee.

148.    The Defendants manipulated workplace policies to maximize financial gain at the expense of the Plaintiff's well-being, deliberately overworking them while suppressing tips. The Defendant also permitted or encouraged management to engage in retaliatory and discriminatory behavior, fostering an environment of fear, stress, and psychological distress."

149.    The Defendants engaged in sustained and pervasive workplace misconduct that violated labor laws and created an intolerable work environment.

150.    Throughout the Plaintiff's employment, the Defendant engaged in a pattern of workplace abuse that included:

151.    Targeted harassment by management and the poker room operation director, including inappropriate and retaliatory comments, threats, and coercive actions.

152.    Unequal and unfair treatment in scheduling, work assignments, and performance evaluations, aimed at undermining the Plaintiff's employment stability.

153.    Psychological intimidation and manipulation to suppress complaints, discourage reporting of misconduct, and force compliance with unjust demands.

154.    The Defendant deliberately subjected the Plaintiff to mental and emotional abuse in the workplace, resulting in severe distress and long-term psychological harm.

155.    The Defendant created an environment of persistent psychological coercion, in which the Plaintiff was forced to endure extreme emotional pressure, verbal abuse, and intimidation tactics. The Defendant's management knowingly imposed undue stress and

unreasonable expectations, creating a toxic workplace where the Plaintiff suffered from anxiety, fear of retaliation, and emotional distress.

156.    The Defendants' intentional acts caused the Plaintiff to experience extreme mental suffering, including sleeplessness, anxiety attacks, depression, and emotional trauma, to the extent that their overall well-being was severely compromised.

Legal Basis for Psychological Coercion and Emotional Distress

157.    The Defendants knowingly engaged in unlawful hustling tips from plaintiff, and selectively interfere tips of plaintiff, unlawfully accused plaintiff she couldn't take tip that players allowed, that deprived the Plaintiff of fair income.

**2,    Legal basis**

**A,    Nevada State Law**:

158.    NRS § 613.330 (Employment Discrimination psychological coercion, mental abuse, or a pattern of sustained mistreatment that makes an employee's working conditions unbearable, it may constitute unlawful psychological abuse.

159    Employee Rights to Tips  NRS § 608.160 states that:

160.    An employer may not withhold, control, or interfere with an employee's tips, unless the tip distribution is part of a lawful tip pooling arrangement.

161    Employers cannot impose rules that effectively reduce or eliminate tips intended for employees.

**B.    Federal Law**

162. Fair Labor Standards Act (FLSA): The Fair Labor Standards Act (FLSA) (29 U.S.C. § 203(m)) establishes that employees have the right to retain tips given to them by customers, FLSA does not regulate how tips must be physically transferred, However, if the casino's policy results in reduced tips for dealers or prevents employees from receiving intended gratuities, it could constitute unlawful tip interference.

163.    According to Restatement (Second) of Torts, § 46, if an employer's conduct is extreme, outrageous, and exceeds the bounds of socially acceptable behavior, directly causing

severe emotional distress to the employee, it constitutes Intentional Infliction of Emotional Distress (IIED)

164.    Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)

The Supreme Court ruled that a hostile work environment is not limited to cases of sexual harassment or racial discrimination—it also includes ongoing psychological coercion and mental abuse.

## C. law about punitive damages

165.  NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

166.    Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

167.    The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

168.    Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

169    State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

170.  **3. Damages Sought**

(1) income damages:                          $25,000.00

(2) Mental and physical stress damages:     $ 3,000,000.00

(3) punitive damages :                      $ 12,000,000.00

Total pray for:                             $ 15,025,000.00


# THE FIFTH CAUSE OF ACTION :SEXUAL HARASSMENT, RETALIATION AND DISCRIMINATION

## 1. Facts:

171.    The Defendants engaged in long-term wage suppression, workplace sexual harassment, and retaliation against the Plaintiff, creating an unbearable work environment

designed to force compliance with improper demands. Defendants purposely offered plaintiff a day shift full time position, but Plaintiff refused the position. The Defendant escalated to retaliation, ultimately malicious terminating the Plaintiff and blacklisting her from the casino industry.

172.    The Defendants subjected the Plaintiff to continuous wage suppression and workplace harassment, coercing the Plaintiff into repeatedly entering the Defendant's office under the pretense of discussing employment matters. However, these meetings were used to make improper demands, the Plaintiff had to accept either financial penalties or submit to physical advances. When the Plaintiff showed even the slightest reluctance, the Defendant escalated retaliatory actions, ultimately maliciously terminated the Plaintiff under false pretenses.

173.    Beyond maliciously termination, the Defendant abused their influence to ensure that the Plaintiff was permanently barred from obtaining future employment in the casino industry. This constitutes not only a severe violation of employment rights but also a deliberate and malicious effort to destroy the Plaintiff's career and well being.

## 2.    Legal Basis

### A.    Federal Law

174.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)

175.    Prohibits quid pro quo sexual harassment, where an employer conditions employment benefits or protection from retaliation on sexual compliance.

176.    Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986)

177.    Established that sexual harassment does not need to be overtly coerced; implicit coercion is sufficient to constitute a violation.

178.    Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)! Defined a hostile work environment as one where harassment is severe and pervasive enough to alter employment conditions.

179.    Cheung v. Reno Hilton, 45 F. Supp. 2d 1132 (D. Nev. 1999), This is an important case of employment discrimination and sexual harassment which emphasizes the employer's responsibility to maintain a safe and respectful working environment.

180.    Title VII of the Civil Rights Act (42 U.S.C. § 2000e-3(a)), Protects employees from retaliation when they refuse sexual advances or report workplace misconduct.

181.    Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), Found that even non-termination retaliation (such as industry blacklisting) violates Title VII.

**B.    Nevada State Law**

182.    NRS § 613.330 – Unlawful Employment Discrimination, Prohibits workplace sexual harassment and requires employers to maintain a harassment-free environment.

183.    Dillard Dep't Stores, Inc. v. Beckwith, 115 Nev. 372, 989 P.2d 882 (1999), Established that employers can be held liable for creating an environment where harassment is tolerated or encouraged.

184.    NRS § 613.340 – Prohibition of Retaliation, Prohibits employers from taking adverse actions against employees who reject sexual advances or report workplace violations.

185.    Robinson v. City of Las Vegas, 2003, Determined that wrongful termination due to noncompliance with employer's improper demands is actionable under Nevada law.

186.    The Defendant engaged in a sustained campaign of financial coercion, sexual harassment, and industry-wide retaliation, leaving the Plaintiff with no viable career options in the casino industry. This goes beyond more than wrongful termination—this is a case of systematic abuse, intended to strip the Plaintiff of their dignity, financial stability, and professional future.

187.    By pressuring the Plaintiff to either comply with inappropriate demands or face economic ruin, the Defendant violated fundamental federal and state employment laws. Furthermore, the Defendant's actions in blacklisting the Plaintiff from employment opportunities represent an egregious abuse of power that demands significant punitive damages.

**C.    State law about punitive damages**

188.   NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

189.   Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

190.   The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

191.   Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

192.   State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

193. **5.    Damages Sought**

| | |
|---|---|
| (1).Lost Wages & Future Earnings. | $2,250,000.00 |
| (2) Emotional Distress (Sexual Harassment & Retaliation. | $7,000,000.00 |
| (3) Reputational Damage (Industry Blacklisting) | $8,000,000.00 |
| (4)Punitive Damages (Malicious Conduct) | $25,000,000.00 |
| (5) Legal Fees & Costs | $100,000.00 |
| Total Pray for : | $42,350,000.00 |

**THE SIXTH CAUSE OF ACTION: CIVIL CONSPIRACY-COLLUSION TO FRAME PLAINTIFF**

**1**, Facts:

194.   Defendants' multiple departments including poker room management, security personnel managers, surveillance staff, legal counsel, and MGM international HR, conspired to fabricate evidence tampered videos, intimidated plaintiff and her witnesses and manipulated regulatory systems to cover up defendants' unlawful acts and prevent Plaintiff from seeking justice.

195.   Defendants knowingly permitted and encouraged multiple departments,  poker room management, security, personnel managers, surveillance staff, legal counsel, and MGM international HR,  to conspire  to fabricate evidence,  tamper videos, intimidate plaintiff and her

witnesses and manipulate regulatory systems to cover up defendants' unlawful acts and prevent Plaintiff from seeking justice.

196.    Defendants willfully neglected their duty to prevent harassment and abuse, thereby enabling multiple departments to maliciously terminate plaintiff, frame plaintiff, intimidate, and harass Plaintiff and Plaintiff's witnesses. This was done with the intent to maliciously terminated plaintiff and prevent future employment in the gaming industry.

197.    Defendant's coordinated actions, including harassment, intimidation, and public humiliation of Plaintiff and Plaintiff's witnesses, constitute an unlawful conspiracy to obstruct justice and suppress truthful testimony.The defendants' actions as a collective crime involving abuse of power, bullying, and severe human rights violations:

198.    Conspiracy: The defendants collaborated to plan and execute unlawful actions that infringed upon plaintiff's rights. Under 18 U.S.C. § 241, it is a federal offense for two or more persons to conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States. Defendant's management, security personnel, and possibly other employees colluded to fabricate allegations against plaintiff.

199.    Violation of Civil Rights: The defendants' actions may constitute a violation of plaintiff's civil rights. According to 42 U.S.C. § 1983, any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

200.    The defendants conspired to systematically and unlawfully infringe upon the plaintiff's fundamental rights, constituting a severe violation of human rights.

201.    The defendants' actions have inflicted permanent, irreparable harm upon the plaintiff, including but not limited to specific injuries, such as physical harm, psychological trauma, economic loss, which cannot be fully remedied by monetary compensation.

**3.    Legal Basis:**

202.    **Nevada State Law**: NRS 199.480 – Conspiracy to commit an unlawful act is prohibited.    NRS 199.230 – Witness tampering is a criminal offense.

203.    **Federal Law**: 18 U.S.C. § 371 – Criminal conspiracy to commit fraud.

18 U.S.C. § 1512 – Witness intimidation and obstruction of justice.

204    **law about punitive damages** NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

205.    Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

206.    The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

207.    Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

208.    **4. Damages Sought**:

(1). Legal fee and cost:              $120.000.00

(1).body health damages:         $5,000,000.00

(2).mental stress damages:       $15,000,000.00

(3), reputational damages:        $20,000,000.00

(4), Punitive damages:             $1,000,000,000.00

Total pray for:              $1,400,120,000.00

## THE SEVENTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

**1,    Facts**

209    Defendants' conduct was extreme and outrageous, causing plaintiff severe emotional distress.

210    Defendants intentionally falsely persecuted plaintiff, manipulated evidence, tampered with many videos and maliciously terminated, maliciously distorted plaintiff's rest of life.

211    Defendants' criminal acts against plaintiff, caused anxiety, depression, financial hardship, and reputational harm. Plaintiff went to see doctors including emergency room , and psychiatrists.

212    As a direct result of the defendant's continuous oppressive and abusive conduct, the plaintiff has suffered severe psychological trauma, leading to an inability to continue employment at the casino. The defendant's actions constitute intentional infliction of emotional distress and have created a hostile work environment."

213.    As a direct result of the defendants' continuous oppressive and abusive conduct, the plaintiff has suffered much mental illness. Symptoms include recurrent distressing memories, nightmares, severe anxiety, and avoidance of stimuli associated with the traumatic events. These symptoms have significantly impaired the plaintiff's daily life and work capacity, leading to an inability to continue employment at the casino. The plaintiff has sought medical assistance and is undergoing psychological therapy, those symptoms consistent with Post-Traumatic Stress Disorder (PTSD). The plaintiff's PTSD is directly attributable to the defendants' actions.

**2,   Legal Basis:**

**A    Nevada State Law:**

214.    Olivero v. Lowe, 116 Nev. 395, 995 P.2d 1023 (2000) – Establishes IIED claims when emotional harm results from deliberate deception or malicious actions.

215.    **Federal Law**: 42 U.S.C. § 1983 – Emotional distress damages in civil rights deprivations.

**C. law about punitive damages**

216.    NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

217.    Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

218.    The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

219.    Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

220.    **3,  Damages Sought:**

(1).  health damages:              $5,000,000.00

(2), emotional distress damages:    $30,000,000.00

(3), reputational  damages:        $50,000,000.00

(4). Punitive damages:            $1,500,000,000.00

Total pray for :          $1,585,000,000.00


**THE EIGHTH CAUSE OF ACTION: WITNESSES INTIMIDATION & RETALIATION**

**1.    Facts**

221.    Defendants multiple times threatened, coerced plaintiff's witnesses who could testify in support of the plaintiff, cost plaintiff and witnesses emotional distress and health damages.

222.    Defendants created a culture of fear to prevent employees from providing truthful statements.

223.    These actions directly obstructed the plaintiff's ability to defend against the allegations, obstructed justice.

**2,    Legal Basis:**

224.    **Nevada State Law**:  NRS 199.230 – Witness tampering is a criminal offense.

225.    **Federal Law:** 18 U.S.C. § 1512 – Witness intimidation and obstruction of justice.

226. **law about punitive damages** NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

227.    Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

228.    The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

229.    Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

230.    **Damages Sought:**

(1), Health damages.          $2,000,000.00

(2), emotional distress:       $8,000,000.00

(3), punitive damages:       $350,000,000.00

Total pray for :        $360,000,000.00

## THE NINTH CAUSE OF ACTION: EVIDENCE TAMPERING &

## FABRICATION OF FALSE EVIDENCE

**1, Facts:**

231.    The defendants intentionally altered and falsified surveillance footage to create a false narrative implicating the plaintiff in misconduct.

232.    The defendants submitted fabricated falsified employee records to support its malicious allegations against the plaintiff.

233.    The defendants' fraudulent evidence was used to mislead the Nevada Gaming Control Board (NGCB), Nevada Gaming Commission (NGC), and DETR resulting in the wrongful revocation of the plaintiff's gaming card and unemployment benefits.

234.    The defendant deliberately suppressed exculpatory evidence that could have proven the plaintiff's innocence.

235.    The defendants' actions were part of a broader conspiracy to maliciously terminate the plaintiff and blacklist her from the gaming industry, defendants destroyed the plaintiff's rest of life.

**2. Legal Basis:**

**A. Nevada State Law:**

236.    NRS 199.210 – Tampering with Evidence, Any person who willfully destroys, conceals, modifies, or falsifies evidence with the intent to mislead judicial or regulatory proceedings is guilty of a criminal offense.

237.    NRS 199.230 – obstruction of Justice, Any act that interferes with, impedes, or obstructs judicial proceedings, including withholding, destroying, or concealing evidence, intimidating witnesses, or preventing the disclosure of critical information, constitutes a crime.

238.    NRS 199.480 – Criminal Conspiracy,  If multiple parties collude to fabricate evidence or obstruct justice, they are guilty of conspiracy under Nevada law.

**B. Federal Law:**

239.    18 U.S.C. § 1519: This statute addresses the destruction, alteration, or falsification of records in federal investigations and bankruptcy. It states: "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States… shall be fined under this title, imprisoned not more than 20 years, or both."

240.    18 U.S.C. § 1001: This statute criminalizes knowingly and willfully falsifying, concealing, or covering up a material fact, or making false statements or representations in any matter within the jurisdiction of the federal government.

241.    18 U.S.C. § 1512 – Obstruction of Justice, It is a federal crime to knowingly alter, destroy, or fabricate evidence with the intent to affect a legal proceeding or an investigation.

### .C. law about punitive damages

242.  NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

243.  Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

244.  The court should consider the defendant's financial condition and the severity of the conduct when determining punitive damages.

245.  Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

**246.  Damages Sought**

(1) income damages:           $2,500,000.00

(2) Body health damages:      $5,000,000.00

(3) emotional distress damages  $10,000,000.00

(4), reputational damages:     $20,000,000.00

(5). Punitive damages:         $2,250,000,000.00

Total pray for :              $2,287,500,000.00

### THE TENH CAUSE OF ACTION: SPOLIATION OF EVIDENCE & OBSTRUCTION OF JUSTICE

**Facts**

247.  The defendants  knowingly refused to provide crucial evidence despite being aware of its significance to the plaintiff's case.

248.  The defendants may have destroyed, altered, or concealed critical evidence to prevent the plaintiff from obtaining exculpatory information.

249.  The defendants intentionally refused to disclose essential materials such as surveillance footage, plaintiff's work logs thereby obstructing justice.

250.    The defendants coerced or pressured managers to withhold key evidence, constituting an act of intimidation. Defendants intimidated plaintiff to delete the video which would be used for key evidence, defendants constituted obstruction of justice. Defendants intimidated plaintiff's witnesses, defendants constituted obstruction of justice, aggravated defendants' crimes.

**2.    Legal Basis:**

**A, Nevada State Law:**

251.    NRS 199.210 – Tampering with Evidence,  Any person who willfully destroys, conceals, modifies, or falsifies evidence with the intent to affect a legal proceeding is guilty of a criminal offense.

252.    NRS 199.230 – Obstruction of Justice,   Any act that interferes with, impedes, or obstructs judicial proceedings, including withholding, destroying, or concealing evidence, intimidating witnesses, or preventing the disclosure of critical information, constitutes a crime.

**B, Federal Law:**

253.    18 U.S.C. § 1512 – Obstruction of Justice, It is a federal crime to knowingly alter, destroy, or conceal evidence, or to intimidate or influence any person to withhold information relevant to an official investigation, court case, or regulatory review.

254.    18 U.S.C. § 1519 – Destruction, Alteration, or Falsification of Records in Federal Investigations, If the defendants destroyed, concealed, or tampered with evidence that could impact a lawsuit or government investigation, they are subject to criminal penalties.

**C.  law about punitive damages**

255.    NRS 42.005 - Definition and Standards for Punitive Damages. This statute defines punitive damages and outlines the circumstances under which punitive damages may be awarded. Key points include:

256.    Punitive damages may be awarded when the defendant's conduct is found to be willful, malicious, or extremely reckless.

257.    The court should consider the defendants' financial condition and the severity of the conduct when determining punitive damages.

258.    Case law: TXO Production Corp. v. Alliance Resources Corp. (1993)

State Farm Mutual Automobile Insurance Co. v. Campbell (2003)

259.    **Damages Sought**

(1). Income damages:                    $2,500,000.00

(1). Body health damages:               $1,000,000.00

(2) emotional distress damages:         $8,000,000.00

(3), reputational damages:              $25,000,000.00

(4). Punitive damages:                  $880,000,000.00

Total pray for :                    $916,500,000.00


**THE ELEVENTH CAUSE OF ACTION – MALICIOUS PROSECUTION**

**(A) APPLICABLE LAW**

This claim is brought under the following statutes:

1. Federal Law:

260.    42 U.S.C. § 1983 – Civil Rights Violation (Deprivation of Due Process Rights)

261.    28 U.S.C. § 1927 – Sanctions for Malicious Prosecution and Vexatious Litigation

262.    Federal Rules of Civil Procedure (FRCP) Rule 11 – Sanctions Against Frivolous or Malicious Legal Filings

2. Nevada State Law (if applicable):

263.    NRS 41.200 – Civil Liability for Malicious Prosecution

264.    NRS 41.1395 – Damages for Malicious Conduct Resulting in Harm

265.    NRS 199.480 – Conspiracy to Obstruct Justice

**(B) FACTUAL ALLEGATIONS**

266    Defendants multiple times fabricated evidence and tampered many videos for the malicious prosecution of plaintiff. False reporting to Nevada Gaming Control Board, tried

to file charges with the District Attorney, District Attorney denied the case, based on " Outside charging guidelines" ( attached the page from gaming report marked as Exhibit(12)).

267.    Defendants multiple times submitted fabricated document evidence and tampered videos evidence in NGCB hearing and after NGCB hearing.   Defendants submitted tampered black screenshots as evidence to DETR referee hearing.

268.    In the unemployment hearing procedure, defendants, despite knowing that their allegations against Plaintiff were fabricated, maliciously appealed the unemployment office's decision.

269.    Defendants submitted multiple tampered  black screenshots evidence, in an effort to discredit Plaintiff.

270.    The Unemployment Referee ruled in Plaintiff's favor, confirming that Plaintiff had no wrongdoing.

271.    Defendants, despite knowing the truth, continued their appeal solely to harass and retaliate against Plaintiff. Defendants maliciously used legal technicalities and procedural delays to exhaust and financially drain plaintiff of fighting for seeking justice.

272.    As a direct result of Defendants' malicious prosecution, Plaintiff suffered:

273.    Financial hardship , including delayed unemployment benefits and legal expenses.

274.    Emotional distress, including anxiety, humiliation, and reputational harm.

**(C) MALICIOUS INTENT OF DEFENDANTS**

275.    Defendants' actions were deliberately malicious, as evidenced by:

276.    Their continued litigation despite tampering screenshots evidence, the lack of any legitimate evidence.

277.    Defendants use of falsified or altered evidence to mislead administrative and legal authorities.

278.    Defendants' retaliatory motive, intended to create financial hardship for Plaintiff and deter or procrastinate future legal action.

279.    Their violation of Plaintiff's constitutional right to due process, as protected under 42 U.S.C. § 1983.

280.   **Damages Sought**

(1)  Financial damages:              $400,000.00

(2). Body health damages:          $2,000,000.00

(3), emotional distress damages:   $6,000,000.00

(4), reputational damages:         $20,000,000.00

(5). Punitive damages:             $150,000,000.00

Total pray for :           $178,400,000.00


**THE TWELFTH  CAUSE OF ACTION  – ABUSE OF PROCESS**

(A) APPLICABLE LAW

This claim is brought under the following statutes:

1. Federal Law:

281.    42 U.S.C. § 1983 – Violation of Constitutional Rights (Due Process)

282.    28 U.S.C. § 1927 – Sanctions for Frivolous and Vexatious Litigation

283.    FRCP Rule 11 – Prohibiting Misuse of Legal Process

2. Nevada State Law (if applicable):

284.    NRS 41.200 – Civil Liability for Abuse of Process

285.    NRS 199.480 – Unlawful Interference with Legal Proceedings

286.    NRS 41.1395 – Recovery for Wrongful and Malicious Acts

(B) FACTUAL ALLEGATIONS

287.    Defendants knowingly misused the legal process by appealing the Unemployment Office's ruling, even after it was determined that Plaintiff was entitled to benefits.

288.    Defendants had no legitimate legal basis for their appeal but used it as a tactic to harass, intimidate,  financially burden and delay to prevent Plaintiff from seeking justice.

289.    Defendants failed to provide any new or credible evidence, confirming that their intent was not to seek justice but to delay and retaliate against Plaintiff.

290.    Defendants maliciously Using legal technicalities and procedural delays to exhaust and financially drain individuals fighting for justice. Defendants' abuse of process resulted in financial hardship and prolonged legal proceedings, further damaging Plaintiff.

291.    **Damages Sought**

(1) Financial damages:                    $40.000.00

(2)  Body health damages:                $300,000.00

(3), emotional distress damages:        $2,000,000.00

(4), reputational damages:              $5,000,000.00

(5). Punitive damages:                  $530,000,000.00

Total pray for :                    $537,340,000.00

## THE THIRTEENTH CAUSE OF ACTION: OBSTRUCTION OF JUSTICE, WITNESSES TAMPERING, FALSE IMPRISONMENT, AND VIOLATION OF GAMING LAWS

## I. APPLICABLE LAW

This claim is brought under the following federal and Nevada state laws:

1. Federal Laws

292.    18 U.S.C. § 1503 – Obstruction of Justice

293.    Prohibits any person from corruptly obstructing, influencing, or impeding any judicial proceeding or legal process.

294.    Includes forcing the destruction of potential evidence to prevent it from being used in a legal case.

295.    18 U.S.C. § 1512 – Witness Tampering & Retaliation

296.    Makes it a crime to use intimidation, threats, or coercion to prevent a person from obtaining, keeping, or submitting evidence.

297.    18 U.S.C. § 1519 – Destruction or Falsification of Evidence

298.    Prohibits knowingly altering, destroying, or concealing documents, records, or other material to impede any legal investigation or proceeding.

2. Nevada State Laws

299.    NRS 200.460 – False Imprisonment

300.    Prohibits unlawfully detaining or restricting the movement of an individual through threats, intimidation, or force.

301.    NRS 205.274 – Coercion & Destruction of Property

302.    Prohibits any person from coercing another into destroying or deleting their personal property, including electronic files such as videos.

303.    NRS 463.140 – Fair Gaming Practices

304.    Requires that casinos operate fairly and transparently and do not use coercion or intimidation against patrons.

305.    NRS 463.170 – Prohibition on False or Misleading Records

306.    Prohibits gaming establishments from falsifying, altering, or misrepresenting casino records, including surveillance footage.

**II. FACTUAL ALLEGATIONS**

307.    Plaintiff Jian Hu legally recorded a video inside of Aria poker room on  December 17th, 2024.

308.    Defendants' employees, including supervisor and poker room management conspired to unlawfully I intimidate and oppress to force Plaintiff to delete the video that is needed for exculpatory evidence.

309.    Plaintiff was approached by multiple casino employees who demanded that Plaintiff delete the video immediately.

310.    Defendants used threats, intimidation, and coercion to pressure Plaintiff into deleting the video against their will.

311.    Plaintiff feeling threatened and unsafe, complied and deleted the video.

312.    The deleted video contained potential evidence related to Plaintiff's ongoing legal matters against defendants :

313.    Defendants intentionally forced the deletion of the video to obstruct any potential investigation or legal action against them.

314.    Defendants' actions were deliberate, malicious, and intended to interfere with Plaintiff's legal rights, violating federal and state law.

## III. LEGAL CLAIMS

315.  Count 1: Obstruction of Justice (18 U.S.C. § 1503)

316.  Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

317.    Defendants knowingly and corruptly engaged in conduct intended to obstruct justice by forcing Plaintiff to delete evidence that could be relevant to a legal case.

318.    The threats and coercion used against Plaintiff demonstrate defendants' intent to prevent the use of the video in any legal proceedings.

319.    As a direct result of Defendants' actions, Plaintiff was shaking and suffering from the intimidation and oppression from the Defendants, leading to health damages and emotional distress.

320.  Count 2: Witness Tampering & Retaliation (18 U.S.C. § 1512)

321.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

322.    Defendants engaged in intimidation and coercion to prevent Plaintiff from keeping or using video evidence in a legal case.

323.    Defendants' actions were taken in bad faith to obstruct an official legal process.

324.    As a result of this misconduct, Plaintiff suffered emotional distress, nightmares loss of peacefulness and loss of security.

325.  Count 3: False Imprisonment (NRS 200.460)

326.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

327.    Defendants' conduct—specifically stopping Plaintiff, pressuring her to delete the video, and making Plaintiff feel they could not leave until she complied—constitutes unlawful restraint.

328.    Plaintiff was intimidated into staying in place and deleting the video under duress, fearing further consequences if she did not comply.

329.    Defendants' actions amount to false imprisonment under Nevada law.

330.    Count 4: Coercion & Destruction of Property (NRS 205.274)

331.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

332.    Plaintiff's video was their personal property, and Defendants had no legal right to force its deletion.

333.    By coercing Plaintiff into deleting the video, Defendants unlawfully to destroy Plaintiff's property in violation of NRS 205.274.

334..    As a result, Plaintiff has suffered economic and emotional distress.

335.    Count 5: Violation of Nevada Gaming Regulations (NRS 463.140 & NRS 463.170)

336.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

337.    Nevada law requires casinos to operate fairly and transparently without intimidation, coercion, or abuse of patrons' rights.

338.    Defendants' actions in using threats to force the deletion of the video were unfair, abusive, and violated Nevada's gaming regulations.

339.    ˋPlaintiff has suffered financial, reputational, and emotional harm due to Defendants' misconduct.

**IV. RELIEF SOUGHT**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

340.    Compensatory Damages

341    Plaintiff seeks damages for legal fees,  reputational harm and emotional distress caused by Defendants' misconduct.

342.    Punitive Damages

343.    Due to the deliberate and fraudulent nature of Defendants' actions, Plaintiff seeks punitive damages to deter similar conduct.

344.    Injunctive Relief

345.    Plaintiff requests that the court order the casino to produce all internal communications regarding the incident.

346.    Plaintiff requests an injunction to prevent the casino from further obstructing evidence collection.

347.    Attorneys' Fees & Costs

348.    Pursuant to 28 U.S.C. § 1927 and NRS 18.010, Plaintiff requests that Defendants pay for all attorneys' fees and litigation costs.

349.    Regulatory Investigation & Sanctions

350.    Plaintiff seeks a formal investigation by the Nevada Gaming Control Board into Defendants' intimidation and destruction of evidence.

351.    Plaintiff requests the revocation or suspension of Defendants' gaming license for violating multiple federal laws and Nevada laws and gaming laws in her case, especially violating NRS 463.170.

352.    **Damages Sought**

(1). Legal fee and costs:              $200,000.00

(2). health damages:                   $500,000.00

(3), emotional distress damages:       $5,000,000.00

(4), reputational damages:             $15,000,000.00

(5). Punitive damages:                 $850,000,000.00

    Total pray for :                   $870,700,000.00

**All cause of actions total pray for :    $9,964,946,000.00**

//

//

## JURY DEMAND

353.    Plaintiff Jian Hu demands a trial by jury on all issues so triable.

354.    For such other and further relief that the Court deems just, proper, and equitable.


DATED this 18th day of February, 2025.


Respectfully Submitted,


By: _____

Jian Hu, plaintiff, self represented

Address: 8675 Martinique Bay Lane,

Las Vegas, NV, 89147

Contact: jinghu1168@yahoo.com

702-635-5095

# Exhibits list

Exhibit (1)   S - 3ASR………………………………………………………..…P3 of the complaint

Exhibit (2)   Screenshot Pictures from the video plaintiff recorded…………P5 of the complaint

Exhibit (3)   Declaration of Thomas E Sakowych………………………..……P5 of the complaint

Exhibit (4)   Declaration of XuFang Yang……………………………….……P5 of the complaint

Exhibit (5)   emails between plaintiff and Defendants………………..…. …P5 of the complaint

Exhibit (6)   Report of the meeting at the night of August 17th, 2023 ………P5 of the complaint

Exhibit (7)   Suspension Pending Investigation Notice…………………..……P5 of the complaint

Exhibit (8)   First page of Plaintiff medical report ………………………….P6 of the complaint

Exhibit (9)   Black screenshots of the video table 20 from Defendants ……P6 of the complaint

Exhibit (10)  Aria poker room tables sketch …………………………….……P9 of the complaint

Exhibit (11)  Incident File Full Report from the Defendants…………..….…P9 of the complaint

Exhibit (12) Separation letter from the Defendants

Exhibit (13) Aria poker room poker policy……………………………….....P18 of the complaint

Exhibit (14) Affidavit of Thomas E Sakowych.

# SECURITIES AND EXCHANGE COMMISSION

# FORM S-3ASR

Automatic shelf registration statement of securities of well-known seasoned issuers

Filing Date: **2024-02-23**
SEC Accession No. 0001193125-24-044559

(HTML Version on secdatabase.com)

## FILER

**MGM Resorts International**
CIK:789570| IRS No.: 880215232 | State of Incorp.:DE | Fiscal Year End: 1231
Type: S-3ASR | Act: 33 | File No.: 333-277326 | Film No.: 24671948
SIC: 7011 Hotels & motels

Mailing Address
3600 LAS VEGAS BLVD S.
LAS VEGAS NV 89109

Business Address
3600 LAS VEGAS BLVD S
LAS VEGAS NV 89109
702-693-7120

**MANDALAY RESORT GROUP**
CIK:725549| IRS No.: 880121916 | State of Incorp.:NV | Fiscal Year End: 0131
Type: S-3ASR | Act: 33 | File No.: 333-277326-36 | Film No.: 24671940
SIC: 7990 Miscellaneous amusement & recreation

Business Address
3950 LAS VEGAS BLVD S
LAS VEGAS NV 89119
7027340410

**VIDIAD**
CIK:1342725| IRS No.: 880428375 | State of Incorp.:NV | Fiscal Year End: 1231
Type: S-3ASR | Act: 33 | File No.: 333-277326-98 | Film No.: 24672003

Mailing Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119

Business Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119
(702)693-7120

**Park MGM, LLC**
CIK:1342726| IRS No.: 880346764 | State of Incorp.:NV | Fiscal Year End: 1231
Type: S-3ASR | Act: 33 | File No.: 333-277326-13 | Film No.: 24671917

Mailing Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119

Business Address
3770 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89109
(702)693-7120

**PRMA, LLC**
CIK:1342730| IRS No.: 880430017 | State of Incorp.:NV | Fiscal Year End: 1231
Type: S-3ASR | Act: 33 | File No.: 333-277326-11 | Film No.: 24671915

Mailing Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119

Business Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119
(702)693-7120

**NEW YORK-NEW YORK TOWER,LLC**
CIK:1342733| IRS No.: 841646058 | State of Incorp.:NV | Fiscal Year End: 1231
Type: S-3ASR | Act: 33 | File No.: 333-277326-16 | Film No.: 24671920

Mailing Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119

Business Address
3950 LAS VEGAS BLVD.
SOUTH
LAS VEGAS NV 89119
(702)693-7120

Copyright © 2024 www.secdatabase.com. All Rights Reserved.
Please Consider the Environment Before Printing This Document

EXHIBIT # (1)

**Vintage Land Holdings, LLC**
CIK:**1454658**| IRS No.: **208920761** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-97** | Film No : **24672002**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Tower C, LLC**
CIK:**1454659**| IRS No.: **421747202** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-02** | Film No.: **24671906**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Tower B, LLC**
CIK:**1454660**| IRS No.: **421747200** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-03** | Film No.: **24671907**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**CityCenter Retail Holdings Management, LLC**
CIK:**1454661**| IRS No.: **743242574** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-84** | Film No.: **24671989**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Signature Tower 3, LLC**
CIK:**1454663**| IRS No.: **263300756** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-05** | Film No.: **24671909**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Signature Tower 2, LLC**
CIK:**1454664**| IRS No.: **263300673** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-06** | Film No.: **24671910**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**MGM Resorts Land Holdings, LLC**
CIK:**1454666**| IRS No.: **510649237** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-32** | Film No.: **24671936**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Mandalay Employment, LLC**
CIK:**1454667**| IRS No.: **262196014** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-38** | Film No.: **24671942**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Aria Resort & Casino, LLC**
CIK:**1454670**| IRS No.: **205396350** | State of Incorp.:**NV**
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-50** | Film No.: **24671955**

Mailing Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3600 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*702-693-7120*

**Nevada Property 1 LLC**
CIK:**1485589**| IRS No.: **271695189** | State of Incorp.:**DE** | Fiscal Year End: 1231
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-19** | Film No.: **24671923**
SIC: 7011 Hotels & motels

Mailing Address
*3708 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*

Business Address
*3708 LAS VEGAS*
*BOULEVARD SOUTH*
*LAS VEGAS NV 89109*
*7026987000*

**Marina District Development Company, LLC**
CIK:**1517008**| IRS No.: **223598642** | State of Incorp.:**NJ** | Fiscal Year End: 1231
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-35** | Film No.: **24671939**
SIC: 7011 Hotels & motels

Mailing Address
*ONE BORGATA WAY*
*ATLANTIC CITY NJ 08401*

Business Address
*ONE BORGATA WAY*
*ATLANTIC CITY NJ 08401*
*(609) 317-1000*

**CityCenter Harmon Hotel Holdings, LLC**
CIK:**1531241**| IRS No.: **261509255** | State of Incorp.:**NV** | Fiscal Year End: 1230
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-81** | Film No.: **24671986**

Mailing Address
*3950 LAS VEGAS BLVD,*
*SOUTH*
*LAS VEGAS NV 89119*

Business Address
*3950 LAS VEGAS BLVD,*
*SOUTH*
*LAS VEGAS NV 89119*
*702-632-9724*

**CityCenter Land, LLC**
CIK:**1531265**| IRS No.: **300445327** | State of Incorp.:**NV** | Fiscal Year End: 1230
Type: **S-3ASR** | Act: 33 | File No.: **333-277326-89** | Film No.: **24671994**

Mailing Address
*3950 LAS VEGAS BLVD,*
*SOUTH*
*LAS VEGAS NV 89119*

Business Address
*3950 LAS VEGAS BLVD,*
*SOUTH*
*LAS VEGAS NV 89119*
*702-632-9724*

**Aria Resort & Casino Holdings, LLC**

Mailing Address

Business Address

Copyright © 2024 www.secdatabase.com. All Rights Reserved.
Please Consider the Environment Before Printing This Document

## TABLE OF ADDITIONAL REGISTRANTS

| Exact Name of Registrant as Specified in Its Charter* | State or Other Jurisdiction of Incorporation or Organization | I.R.S. Employer Identification Number |
|---|---|---|
| 550 Leasing Company II, LLC | Nevada | 27-2301518 |
| AC Holding Corp. | Nevada | 88-0220212 |
| AC Holding Corp. II | Nevada | 88-0220229 |
| Arena Land Holdings, LLC | Nevada | 80-0935801 |
| Aria Resort & Casino Holdings, LLC, dba Aria Resort & Casino | Nevada | 26-1508970 |
| Aria Resort & Casino, LLC | Nevada | 20-5396350 |
| Beau Rivage Resorts, LLC, dba Beau Rivage Resort & Casino | Mississippi | 81-1177162 |
| Bellagio, LLC, dba Bellagio Resort & Casino | Nevada | 94-3373852 |
| Cedar Downs OTB, LLC | Ohio | 34-1904857 |
| Circus Circus Casinos, Inc. | Nevada | 88-0191825 |
| Circus Circus Holdings, Inc. | Nevada | 83-4073822 |
| CityCenter Boutique Hotel Holdings, LLC | Nevada | 74-3242576 |
| CityCenter Boutique Residential Development, LLC | Nevada | 27-3246985 |
| CityCenter Facilities Management, LLC | Nevada | 27-3246985 |
| CityCenter Harmon Development, LLC | Nevada | 20-5351071 |
| CityCenter Harmon Hotel Holdings, LLC | Nevada | 26-1509255 |
| CityCenter Holdings, LLC | Delaware | 35-2314378 |
| CityCenter Land, LLC | Nevada | 30-0445327 |
| CityCenter Realty Corporation | Nevada | 20-5106648 |
| CityCenter Retail Holdings, LLC | Nevada | 26-0489228 |
| CityCenter Retail Holdings Management, LLC | Nevada | 74-3242574 |
| CityCenter Vdara Development, LLC | Nevada | 20-5351142 |
| CityCenter Veer Towers Development, LLC | Nevada | 20-5558235 |
| Destron, Inc. | Nevada | 88-0234293 |
| Grand Garden Arena Management, LLC | Nevada | 47-1783973 |
| Grand Laundry, Inc. | Nevada | 88-0298834 |
| Las Vegas Arena Management, LLC | Nevada | 47-1343574 |
| LV Concrete Corp. | Nevada | 88-0337406 |
| MAC, CORP. | New Jersey | 22-3424950 |
| Mandalay Bay, LLC, dba Mandalay Bay Resort & Casino | Nevada | 88-0384693 |
| Mandalay Employment, LLC | Nevada | 26-2196014 |
| Mandalay Place, LLC | Nevada | 88-0383769 |
| Mandalay Resort Group, LLC | Nevada | 88-0121916 |
| Marina District Development Company, LLC, dba The Borgata Hotel Casino & Spa | New Jersey | 22-3598642 |
| Marina District Development Holding Co., LLC | New Jersey | 22-3767831 |
| Metropolitan Marketing, LLC | Nevada | 22-3756320 |
| MGM CC, LLC | Nevada | 47-5658144 |
| MGM CC Holdings, Inc. | Nevada | 87-14444905 |
| MGM Dev, LLC | Delaware | 83-4064072 |
| MGM Detroit Holdings, LLC | Delaware | 91-1829051 |
| MGM Grand Hotel, LLC, dba MGM Grand Hotel & Casino | Nevada | 94-3373856 |
| MGM Hospitality, LLC | Nevada | 20-8588249 |
| MGM International, LLC | Nevada | 20-5581298 |
| MGM Lessee, LLC | Delaware | 81-1191134 |
| MGM Lessee II, LLC | Delaware | 84-4924286 |
| MGM Lessee III, LLC | Delaware | 87-2256771 |
| MGM MA Sub, LLC | Massachusetts | 45-4315066 |
| MGM Public Policy, LLC | Nevada | 47-1756597 |

Copyright © 2024 www.secdatabase.com. All Rights Reserved.
Please Consider the Environment Before Printing This Document

## Explanation of pictures

Pictures are on order from top to bottom, total 6 pictures, they are enlarged screenshots from the video plaintiff recorded at Aria poker room.

**Picture 1**: The video started, the white women dealer is dealing the "PRE TIP" game;

**Picture 2**, The dealer's right hand is making a movement to pick up two $25(green) chips from the pot , her left hand is holding cards, the game still in progress;

**Picture 3** , The dealer changed one $25 chip to five $5 (red) chips and collected $20 for the casino time fee, put them on the top of the drop box, her left hand is still holding cards;

**Picture 4**,  The dealer is picking up one green chip and one red chip total $30 chips, her left hand is still holding cards;

**Picture 5**, The dealer's right hand with chips is moving to her shirt pocket, her left hand is still holding cards;

**Picture 6**, The dealer is dropping tips into her pocket, her left hand is still holding cards.

Plaintiff will provide the recorded video in the hearing if it's necessary.

**EXHIBIT #** _(2)_



Add a Caption

Tuesday • Dec 17, 2024 • 9:31 PM          Adjust
IMG_8245

Apple iPhone 14 Pro Max          

Main Camera — 24 mm ƒ1.78
1080p • 1080 × 1920 • 49.1 MB

59.94 FPS                    00:17





2



3

4



5



6

## DECLARATION OF THOMAS SAKOWYCH FOR SUPPORTING POKER DEALERS WERE ALLOWED TO TAKE TIP FROM THE POT OF "BOOM POT, PRE TIP" GAME

I, THOMAS SAKOWYCH, under the penalty of perjury declare the followings:

(1) I am currently working as poker dealer for about 18 years at Bellagio Hotel and Casino located at Las Vegas, Nevada since 2006.

(2) As a veteran poker dealer I deal all the poker games.

(3) Pre tips are legal, ethical, allowed by players and poker room management, and are Industry standard for poker games. The most common way is during a BOMB POT pre tip game which rake (time fee charged by casinos)and dealers' tips are taken from the pot, during the first hand still in progress and not finished, this is commonly practiced in Bellagio poker room by all dealers, the dealers were instructed they might take the rake and tip from the pot.

(4) The dealers at Aria poker room did the same way took pre tip from pot on "BOMB POT"pre tip game before Jian Hu was determined on August 24 2023. Aria Casino and Bellagio Casino are sister casinos belong to MGM corporation, there was no written tip policy in neither Aria poker room nor Bellagio poker room when Jian Hu was determined on August 24th 2023.

(5) Under penalty of perjury, I declare that I have read the foregoing and know the contents thereof; that the same is true of my own knowledge except as to those matters therein stated on information and belief, and as to those matters, I believe them to be true.

EXECUTED on _10_ day of _DECEMBER_ 2024

THOMAS SAKOWYCH declarant

//
//
//
//
//
//
//
//
//
//

**EXHIBIT # (3)**

## THOMAS SAKOWYCH VERIFICATION

STATE OF NEVADA   )
                  ) SS:
COUNTY OF CLARK )

    I, THOMAS SAKOWYCH, being first duly sworn under penalties of perjury, deposes and says:

    I have read the foregoing DECLARATION and know the contents thereof; that the DECLARATION is true and I am fully understand the contents thereof .

On this _10 ᵗ ᵗ_ day of _DEC_ , 202 _4_ , personally appeared before me _Destiny Macias_ a Notary Public, THOMAS SAKOWYCH, known or proved to me to be the person who executed the foregoing DECLARATION, and who acknowledged to me that he did so freely and voluntarily and for the uses and purposes herein stated.

    Signature: _Thomas E Sakowych_

              THOMAS SAKOWYCH

State of Nevada
County of Clark
Signed and sworn before me _Destiny Macias_ on _12_ / _10_ / 2024 by THOMAS SAKOWYCH.

    Notary Seal



                       Signature of notarial officer

Page 2 of 2

## DECLARATION OF XUFANG YANG, FOR SUPPORTING POKER DEALERS WERE ALLOWED TO TAKE TIP FROM THE POT OF "BOOM POT, PRE TIP" GAME

I, XUFANG YANG,, under the penalty of perjury declare the followings:

(1) I am currently working as poker dealer at Resorts World Hotel and Casino located in Las Vegas, Nevada, I have worked as a poker dealer for about 7 years.

(2) As a veteran porker dealer I deal all the poker games.

(3) Pre tips are legal, ethical, allowed by players and poker room management, and are Industry standard for poker games. The most common way is during a "BOMB POT" pre tip game which rake (time fee charged by casinos)and dealers' tip are taken from the pot, during the first hand still in progress and not finished. This is commonly practiced in Resorts World poker room by all dealers,

(4) Under penalty of perjury, I declare that I have read the foregoing and know the contents thereof; that the same is true of my own knowledge except as to those matters therein stated on information and belief, and as to those matters, I believe them to be true.

EXECUTED on _16_ day of _12 Dec_, 2024

Xufang Yang
XUFANG YANG, declarant

//
//
//
//
//
//

State of Nevada
County of Clark
Subscribed and sworn to before me this _16th_ day of
_December_, _2024_ by
_Xufang Yang_
_____, Notary Public



LAMAR LUCAS
Notary Public, State of Nevada
No. 24-3789-01
My Appt. Exp. Sept. 2, 2028

EXHIBIT # (4)

## <u>XUFANG YANG  VERIFICATION</u>

STATE OF NEVADA   )

                        ) SS:

COUNTY OF CLARK )

          I, XUFANG YANG,, being first duly sworn under penalties of perjury,

deposes and says:

          I have read the foregoing DECLARATION and know the contents thereof;

that the DECLARATION is true and I am fully understand the contents thereof .

          On this _16_ day of _Dec__ , 2024, personally appeared before me

_Lamar Lucas_____ , a Notary Public, XUFANG YANG,, known or proved to me to be the

person who executed the foregoing DECLARATION, and who acknowledged to me that he did

so freely and voluntarily and for the uses and purposes herein stated.

                         Signature:___Xufang Yang___

                         XUFANG YANG,

     Signed and sworn  before me _Lamar Lucas_____ on _12_ / _16_ / 2024 by

XUFANG YANG,

Notary Seal                   **LAMAR LUCAS**
                  Notary Public, State of Nevada
                  No. 24-3769-01
                  My Appt. Exp. Sept. 2, 2028          Signature of notarial officer

Page 2 of 2

**From**    Jing Hu <jinghu1168@yahoo.com>

**To:**    <smccormack@mgmresorts.com>

**Date**    Sep 11, 2023 at 3:13 PM

Dear Sean:

I am Jian Hu. I have worked in the Aria poker room for 5 years.
I just got seperated from MGM company on Aug_24th . I want
to talk with you about what happened and request
the Reinvestigation and Revaluation for my case, I want my job
back.
1. Unclearly and unjustified for each accusation. (Wrongfully
Being Accused)
2. How did I miscount? (GRC # 13)
3. How was I careless? (GRC # 13)
4. How was I negligent? (GRC # 13)
5. How was it my performance didn't meet the Company
Standards? (GRC # 14)
6. How did commit theft in your findings? (GRC # 25) (Serious
Accusation)
7. How did I engage in personal gain? (GRC # 38)
8. How did I violate any rules, regulations, and procedures? (GCR
# 40)
9. How did I disregard or violate the Company or department
rules,
procedures or polices? (GCR # 43)
10. Admitting taking chips from the pot, that was a pretip table,
it was under players acknowledgement and authorization, as also
under management acknowledgement and awareness of such
collecting pre-tips process. How can that be wrongfull
termination or misunderstanding?

In the sense of fairness, I'm entitled for the full details of each
accusation, how, where, when and what, let up to such
conclusions of termination of my employment.
I truly believe that your initial investigation wasn't collecting the
correct information, or communication with misunderstanding
base on my language barrier.

The SPI inform date was on 08/17/2023, the incident date was on
07/19/2023, there are discrepancy with the benefit of the doubt. I
was already on my vacation 07/19/2023.  I couldn't be that subject
you were looking at on the 19th.
(Possibly Wrong Subject under the investigation)
Your surveillance personnel was asking a question, then right
away I was being accused of 'Lying'? The accusation wasn't
clearly explained nor proof offered (ie video serveillance). What
did I lie about? (Possibly justifies under personal opinion without
facts and proof)
I could have taking pre-tips out of the pot, but all within players

EXHIBIT # ___

I could have taking pre-tips out of the pot, but all within players acknowledgement and players authorization. Management already acknowledge such pre-tips in the collection process. How could that be illegal and not entitle to collect such pre-tips from players appreciation pre- tipping. This collecting process/pre tipping has been going on for quite some time. Why is it a problem now? Why only me?
(Possibly department management disregard the possibility of the serious problems in the pre- tipping process)
Most other employee if violated any of the Company or Department rules, regulations, procedures or polices, most for the first time non serious violation would be just verbal warning on record, if second time then written warning on record, if third time then might be disciplinary action. As my understanding that I have none of such violations nor warnings on my record. Why would I'm being punishment is such degree.
(Possibly I'm in the wrong timing, being accused by the wrong personnel, being punishing in such harsh ways).
There are doubts, unexplained, unclear, unjustified, no proof of the accusations were present, no cross examination, only one side story, took away the right for defend my side of the story.
I expect such high profile corporation company would be more fair and equal to their employee in such serious accusation.
I'm looking forward for your fair reconsideration to reopen this case for reinvestigation and revaluation. Thank you!
"I have done NO theft ever in my life, is this misjudgment or misunderstanding?"

Every game can be pre tip game , not authorized by management, authorized by players . We every dealer had taken pre tip from bomb pot for years and years, had never got managers authorization. We had never got trained for how to take pre tip, and no pre tip policy for reading either . I sent email to MGM international asking for my personal file and the policy for pre tip, I have never got answer.

I talked with some Aria poker room coworkers few days ago, the dealers were  still doing the same way to take pre tip from the Bomb pot, like I did before, nothing have changed since The incident day July 19th, if I did wrong, every dealer did wrong , why only against me fire me , also why others haven't got trained……

Here, I request my job back. Thank  you very much!


Sincerely

Jian Hu
Sep 11th 2023

Sent from Yahoo Mail for iPhone

| **Subject** | RESOLVED: HR Shared Services Case [22002639] |
| **From** | mgm-hrsscase@mgmresorts.com <mgm-hrsscase@mgmresorts.com> |
| **To:** | <jinghu1168@yahoo.com> |
| **Date** | Aug 18, 2023 at 12:17 PM |

Hi JIAN,

Per our phone conversation, you were calling to follow up with your current SPI that you were placed on as of 08/17/2023 about an incident that occurred on 07/19/2023. You stated that you did not work that day and you have tried to contact your manager, but he has not gotten back to you.

Suspension Pending Investigations (SPI) are reviewed by Employee Relations. HR Shared Services does not have access to provide you an update. An Employee Relations partner will contact you directly to discuss the SPI. SPIs are handled on a case-by-case scenario. Some investigations may take longer to complete than others, therefore there is not a standard response time that can be provided.

Case # 22002639 is now considered resolved.

To reopen this case, reply to this email, or log on to the Check Case Status page on My MGM and click case number 22002639 to add more information and I will follow up with you as soon as possible. If you reply after 08/25/2023 18:00, we'll open a new case for you.

Thank you,

Jennifer, HRSS (TIER 1) Team

3:52

# Your HR Case [22103903] has been R...

From mgm-hrsscase@mgmresorts.com
To jinghu1168@yahoo.com
Mar 4 at 10:13 AM

Hi JIAN,

After further review of your question/situation/concern, here is your final answer:

I've reviewed your question and have escalated it so one of my teammates can take a closer look at what's going on. You will hear something from them on or before 02/06/2024.

If you would like to share additional information that you think will help them, you can reply to this email, or log on to the Check Case Status page on My MGM and click case number 22103903.

Hello Jian,

Employees separated from The Company no longer have access to My MGM or Workday. While we are unable to assist you with this access, we can escalate your timecard request to the Payroll Department.

Your case is in good hands with the Payroll team. Because the Payroll team is outside of HR Shared Services, I will not be able to provide any status updates on this request from this point forward.

To communicate directly with the Payroll team, you can reply to this email.

Hello,

Please reach out to your management team or Property HR for assistance on your request for previous timecards.

Thank you,

Payroll

Delete Archive Move Reply More

Scanned with CamScanner

been (since June 1 (?) 2001) _____ enough $
only way to make $ is to ask for pre-tip. A
Bellagio dealers & other Dealers also do it.

☑ **Aria**    ☐ **Vdara**    ☐ CRYSTALS.

### GUEST/EMPLOYEE STATEMENT

NAME _____   ID # Lisa774 - Interviewed

ADDRESS _____   Cheng 108867 present

2018- November started work  (5 years @ Aria)    | who normally tips?
- Poker Dealer                                    | the winner -
Palms 7-8 years as Table Games (all except craps) | She takes tip without
- Rio @ $2 years  2017 + 2018                      | a winner which is not
                                                   | standard practice

3 types of Poker Games, 30-40 mixed variations   (7-8 in Poker Room)
.5.5 Rock - PLO    tokes - players tip  -  drop rake  -  ask players for
                                                              pre tip

yes you can take as pre tip - sometimes guest says no   (not allowed)

7/19/2023 - Table 20 - She said "sorry" + gave it back - he's the only one
                       ($20)                           who said no

July 19- today - Went to China $2,300 round trip - vacation
                 Spent $8,000 almost         $11.25 hourly rate

- no manager instructed her to do so - other dealers told her

She says guest Verbally approves what amount she takes out of the pot

Poker does not receive tokes on PTO  - only hourly rate $11.25

No one instructed her and no one told her "no" to pre tip

Never asked manager - said other dealers also do it

SECURITY OFFICER'S SIGNATURE AND ID#          Christy Day  533107
                                              GUEST/EMPLOYEE SIGNATURE
3060051939 (11/09)

## EXHIBIT # (6)

## SUSPENSION PENDING INVESTIGATION NOTICE

EMPLOYEE NAME: _JIAN HU_    EMPLOYEE #: _487076_

POSITION: _DEALER POKER_

INCIDENT DATE: _7/19/23_    DATE ISSUED: _8/17/23_

You are being placed on Suspension Pending Investigation ("SPI") effective _8/17/23_. This is not a disciplinary action; it is a process that the Company utilizes to remove you from the workplace in order to investigate a serious situation or policy infraction in which you may have been involved. It is also utilized if you have reached the final step in the progressive disciplinary process.

You will have the opportunity at a later date to attend an Investigational Meeting with an Employee Relations Representative to discuss your Suspension Pending Investigation. At this time, you must leave property. Employee Relations will contact you to schedule your Investigative Meeting and you must make yourself readily available for that meeting.

While on SPI, please understand that you are not permitted on property except to attend your meeting with Employee Relations. If you have any questions or have additional information regarding the investigation, please contact Employee Relations:

Upon the completion of the investigation process, one of the following things will occur:

1. You will be returned to work without disciplinary action and compensated for the scheduled shifts missed resulting from the SPI. You will not be compensated for any shifts missed due to your unavailability to work; or

2. You will be returned to work with disciplinary action if warranted based on the outcome of the investigation, and possibly no compensation; or

3. You will be separated from the Company if warranted based on the outcome of the investigation.

Your signature below acknowledges that you have read this document and that you understand it is not an admission of guilt.

_8/17/2023_    _702-635-5095_    _jinghui1168@yahoo.com_
Employee Signature    Date    Phone Number    Email

_Ryan Kirk_    _8/17/23_    _705136_
Supervisor Name    Date    Supervisor Signature

Employee Comments:

**EXHIBIT # ( 7 )**

Case 2:25-cv-00320-MMD-NJK     Document 6     Filed 08/26/25     Page 86 of 101
Patient Name: Hu, Jian
Date of Visit: 25-Aug-2023
Document Type: Clinical Summary_S
Site Name: SES-HIM South Eastern - Health Information Management
MRN: 4402572     Owner: AHSAdmin,AHS
DOB: 10/12/1969

Southwest Medical Associates
888 S Rancho Dr
Las Vegas,NV 891063810



8/25/2023

*Clinical Summary-CED*

**Southwest Medical Associates, Inc.**

888 S Rancho Dr
Las Vegas,NV 891063810
(702) 877-5108

| Patient: | Hu, Jian | | EMRN: | 4402572 | |
|---|---|---|---|---|---|
| | 8675 Martinique Bay Ln | | Age/DOB: | 53 yrs | 10/12/1969 |
| | Las Vegas, NV 89147 | | Gender: | Female | |
| | | | Marital Status: | Married | |
| | | | Language: | CHINESE | |
| | | | Race: | Asian | |
| Encounter Date: | 8/24/2023  10:50:00PM | | Ethnicity: | Not Reported | |
| | | | Home: | (702) 635-5095 | |
| | | | Work: | | |

## RCC-URGENT CARE Medical Summary

### Active Problems

Encounter for routine gynecological examination (Active)
Contraceptive surveillance (Active)
Counseling for sexually transmitted diseases (Active)
Reactive airway disease (Active)
Herpes zoster (Active)
Tachycardia (Active)
Anxiety attack (Active)
Anxiety (Active)
Irregular heart rate (Active)

### Problems Assessed at Appointment

Tachycardia (Active)
Anxiety attack (Active)
Anxiety (Active)
Irregular heart rate (Active)

### Medications

| Medication | Instructions | Reason | StartDate |
|---|---|---|---|
| hydrOXYzine HCl - 10 MG Oral Tablet | TAKE 1 TABLET AT BEDTIME. | Anxiety\|Anxiety attack | 08/25/2023 |

**EXHIBIT # C8**

1

8/25/2023

**Photos from Surveillance/Incident - Jian Hu_487076_INV-23-07-1084**

**Date/Time:** 7/17/2023 at 10:07PM

**Location:** Table 20

**Details:** On 7/17/2023 at 10:07PM, Hu was on Table 20. She dealt the first round with 7 patrons paying $25 each for the Bomb Pot. Hu collected $49 from the pot, for the time pot. At 10:08PM, she was observed taking $15 from the main pot and placing it in her shirt pocket. At this time, patron Jerome Dumayet (PC#78622610) was observed pointing to the pot. At 10:08PM, Hu was observed returning the $15 to the main pot. The patron reported the incident, which was escalated to management for further review and additional incidents were found, in which Hu did not return chips, and documented in the Incident Report (attached in Investigate Tab).



**EXHIBIT # C9)**

RESTRICTED: NRS 612.265 limits the use of this material to unemployment compensation litigation except for specified exceptions.

Case No.:    V-23-A-01997
Exhibit No.:    005





RESTRICTED: NRS 612.265 limits the use for this material to unemployment compensation litigation except for specified exceptions.



RESTRICTED: NRS 612.265 limits the use for this material to unemployment compensation litigation except for specified exceptions.

Case No.:    V-23-A-01997
Exhibit No.:       007



EXHIBIT # (10)

**Incident File Full Report**                    **Incident File #IN20230050569**

**Record Creation Details**

| | | | |
|---|---|---|---|
| Date/Time Occurred: | 7/19/2023 7:40:16 PM | Department: | Surveillance |
| Day of Week Occurred: | Wednesday | Owner: | a 58 |
| Date/Time Created: | 7/19/2023 7:49:36 PM | Operator ID: | a 58 |
| Date/Time Closed: | | Operator Name: | |
| Closed By: | | Personnel ID: | |
| | | Card Number: | |
| | | Job Position | |
| | | Secondary Operator: | |

**Location of Incident:**

| | |
|---|---|
| Property: | Aria |
| Location: | Poker |
| Sublocation: | |

**Details of Incident:**

| | |
|---|---|
| Daily Log #: | DL20230220594 |
| Incident Type: | Fraud & Theft |
| Specific: | Dealer Theft - Not Collusion |
| Incident Status: | Under Investigation |
| Synopsis: | Fraud and Theft, Poker. |
| Checklist: | |

Narrative:

| | | | |
|---|---|---|---|
| **Created On** | 7/19/2023 7:42:45 PM | **Created By** | a 58 |
| **Modified On** | 7/26/2023 2:21:10 PM | **Modified By** | a 36 |

On 07/19/23, Director of Poker Operations Ryan Kirk requested a review of Dealer Jian Hu (# 487076) on 7/13/23, 7/14/23, 7/16/23, and 7/17/23 on various tables. Ryan stated that on 7/17/23 on table 20, Patron Jerome Dumayet (MR# 78622610) observed Hu taking approximately $25 from the Bomb Pot. When the patron confronted the dealer about the incident, she returned the funds to the pot. Kirk requested a review of the previous days Hu dealt PLO 5/5 games to determine if she took from the Bomb Pot. Ryan informed Surveillance that Hu's schedule is Monday, Thursday, Friday, Saturday, Sunday, from 21:00 to 05:00.

A review of 1509 on 7/13/23 at 22:04 showed Hu on Table 9. She dealt the first round with 8 patrons paying $25 each for the Bomb Pot. She collected $56 from the pot, for the time pot. At 22:05:21, she was observed taking $20 from the main pot and placing it in her shirt pocket as a toke.

A review of 1508 on 7/14/23 at 02:32 showed Hu on Table 8. She dealt the first round with 6 patrons paying $50 each for the Bomb Pot. Hu collected $35 from the pot, for the time pot. At 02:32, she was observed taking $20 from the main pot and placing it in her shirt pocket as a toke.

| Reporting Party: | Supervisor: |
|---|---|

EXHIBIT # C1)

**Incident File Full Report**                           **Incident File #IN20230050569**

A review of 1512 on 7/16/23 at 02:08 showed Hu on Table 12. She dealt the first round with 6 patrons paying $50 each for the Bomb Pot. Hu collected $42 from the pot, for the time pot. At 02:09, she was observed taking $10 from the main pot and placing and placing it in her shirt pocket as a toke.

A review of 1504 on 7/17/23 at 04:01 showed Hu on Table 4. She dealt the first round with 7 patrons paying $25 each for the Bomb Pot. Hu collected $44 from the pot, for the time pot. At 04:03, she was observed taking $15 from the main pot and placing it in her shirt pocket as a toke.

A review of 1504 on 7/17/23 at 05:02 showed Hu on Table 4. She dealt the first round with 7 patrons paying $25 each for the Bomb Pot. Hu collected $55 from the pot, for the time pot. At 05:04, she was observed taking $20 from the main pot and placing it in her shirt pocket.

A review of 1520 on 7/17/23 at 22:07 showed Hu on Table 20. She dealt the first round with 7 patrons paying $25 each for the Bomb Pot. Hu collected $49 from the pot, for the time pot. At 22:08, she was observed taking $15 from the main pot and placing it in her shirt pocket. At this time, Patron Jerome Dumayet was observed pointing to the pot. At 22:08, Hu was observed returning the $15 to the main pot.

Total Patron loss : $85

Further review of Hu's shift on 7/14/23 showed the following:

On 1501, Hu was observed on Table 1 from 12:31 to 01:01. No suspicious activity was observed while dealing on the game.
On 1507, Hu was observed on Table 7 from 02:01 to 02:29. No suspicious activity was observed while dealing on the game.
On 1508, Hu was observed on Table 8 from 02:31 to 03:12. This was part of the initial review in which it was determined she took $20 from the pot. A review of the rest of her time on the table revealed no further suspicious activity.
On 1502, Hu was observed on Table 2 from 03:33 to 04:02. No suspicious activity was observed while dealing on the game.
On 1511, Hu was observed on Table 11 from 04:03 to 04:13. The game broke at 04:07. No suspicious activity was observed while dealing on the game.

Please see supplemental entries for further review.

**Executive Brief:**

**Participants Involved:**

**Personnel**

| Full Name: | Hu, Jian | Property: | Aria |
|------------|----------|-----------|------|
| Role: | Dealer, | Department: | Poker |

| **Reporting Party:** | **Supervisor:** |
|---|---|

Printed: 7/26/2023   5:41:53 PM                                   Page 2 / 5

NGCB EXHIBIT G pg. 14 of 29

**Incident File Full Report**                    **Incident File #IN20230050569**

---

**Supplemental Entries:**

---

SP20230005162  Attached by a 73  on Jul 19, 2023 21:25

Description    A review of Hu's shift on 07/13/23 showed Hu took a total of $50 from the pot.

A review of 1502 on 7/13/23 at 21:31 showed Hu on Table 2. She dealt the first round with 6 patrons paying $300 each for the Bomb Pot. Hu collected $120 from the pot, for the time pot. At 21:33:44, she was observed taking $50 from the main pot and placing it in her shirt pocket.

At 22:02, Hu left Table 2. No other suspicious activity was observed.

A review of 1509 on 7/13/23 at 22:04 showed Hu on Table 9. She dealt the first round with 8 patrons paying $25 each for the Bomb Pot. Hu collected $56 from the pot, for the time pot. At 22:05:21, she was observed taking $20-$25 from the main pot and placing it in her shirt pocket as a toke. * This is a duplicate from the original review*

A review of 1510 on 7/13/23 from 22:31 to 23:03 showed Hu on Table 10. No suspicious activity was observed.

---

SP20230005170  Attached by a 08  on Jul 20, 2023 06:34

Description    A review of Hu's shift on 07/15/23 to 07/16/23 showed Hu took a total of $40 from the pot.

A review of 1509 on 7/15/23 at 23:04 showed Hu on Table 9. She dealt the first round with 7 patrons paying $20 each for the Bomb Pot. Hu collected $5 from the pot, for the time pot. At 23:06, she was observed taking $10-$15 from the main pot and placing it in her shirt pocket as a toke.

A review of 1510 on 7/15/23 at 23:37 showed Hu on Table 10. She dealt the first round with 8 patrons paying $25 each for the Bomb Pot. Hu collected $56 from the pot, for the time pot. At 23:38, she was observed taking $20 from the main pot and placing it in her shirt pocket as a toke.

A review of 1511 on 7/16/23 at 01:33 showed Hu on Table 11. She dealt the first round with 4 patrons paying $50 each for the Bomb Pot. Hu collected $32 from the pot, for the time pot. At 01:34, she was observed taking $10 from the main pot and placing it in her shirt pocket as a toke.

A review of 1512 on 7/16/23 at 02:08 showed Hu on Table 12. She dealt the first round with 6 patrons paying $50 each for the Bomb Pot. Hu collected $42 from the pot, for the time pot. At 02:09, she was observed taking $10 from the main pot and placing it in her shirt pocket as a toke. *This is a duplicate from the original report*

---

SP20230005180  Attached by a 57  on Jul 20, 2023 15:07

Description    A review of Hu's shift on 07/16/23 to 07/17/23 showed Hu took a total of $25 from the pot.

A review of 1505 on 7/16/23 at 21:02 showed Hu on Table 5. At 21:03, she was observed taking $25 from the main pot and placing it in her shirt pocket as a toke.

A review of 1504 on 7/17/23 at 04:01 showed Hu on Table 4. At 04:03, she was observed taking $15 from the main pot and placing it in her shirt pocket as a toke. *This a duplicate from the main report*

---

SP20230005185  Attached by a 73  on Jul 20, 2023 22:06

---

| Reporting Party: | Supervisor: |
|---|---|

NGCB EXHIBIT G pg. 15 of 29

**Incident File Full Report**                      **Incident File #IN20230050569**

---

SP20230005185  Attached by a 73  on Jul 20, 2023 22:06                        SP20230005185
                                                                              - Continued-

Description      A review of Hu's shift on 07/17/23 showed Hu took a total of $0 from the pot. (Main report
                 accounted for loss)

                 A review of 1504 on 7/17/23 at 05:03 showed Hu on Table 4. She dealt the first round with 7
                 patrons paying $25 each for the Bomb Pot. Hu collected $55 from the pot, for the time pot. At
                 05:04, she was observed taking $20 from the main pot and placing it in her shirt pocket as a
                 toke * This is a duplicate from the original review*

                 A review of 1517 on 7/17/23 from 05:36 to 06:00 showed Hu on Table 17. No suspicious activity
                 was observed.

---

SP20230005186  Attached by a 73  on Jul 20, 2023 22:09

Description      A review of Hu's shift on 07/17/23 to 07/18/23 showed Hu took a total of $60 from the pot.

                 A review of 1506 on 7/17/23 at 21:01 showed Hu on Table 6. She dealt the first round with 5
                 patrons paying $50 each for the Bomb Pot. Hu collected $42 from the pot, for the time pot. At
                 21:03, she was observed taking $10 from the main pot and placing it in her shirt pocket as a
                 toke

                 A review of 1519 from 21:31 to 22:04 showed Hu in Table 19. No suspicious activity was
                 observed.

                 A review of 1521 from 22:35 to 23:31 showed Hu on Table 21. No suspicious activity was
                 observed.

                 A review of 1502 at 23:31 showed Hu on Table 02. The patron on seat 8 gave $100 for Time Pot.
                 Hu collected $72 for 8 players. At 21:33, Hu was observed taking $25 from the Time Pot and
                 placing it in her left shirt pocket. Hu placed $72 for house rake and returned $3 to seat 8 patron.

                 A review of 1522 from 00:01 to 00:33 showed Hu on Table 22. No suspicious activity was
                 observed.

                 A review of 1523 from 00:34 to 01:01 showed Hu on Table 23. No suspicious activity was
                 observed.

                 A review of 1524 from 01:02 to 01:32 showed Hu on Table 23. No suspicious activity was
                 observed.

                 A review of 1507 on 7/18/23 at 02:00 showed Hu on Table 7. At 02:02, Hu collected $100 from
                 seat 4 for the time pot. She then dropped $54 for the time pot and was observed taking $25 and
                 placing it in her shirt pocket as a toke.

                 A review of 1508 from 03:00 to 03:32 showed Hu on Table 8. No suspicious activity was
                 observed.

---

| Reporting Party:          | Supervisor:           |
|---------------------------|-----------------------|

Printed: 7/26/2023   5:41:53 PM                                               Page 4 / 5

**Incident File Full Report**

<u>**Incident File #IN20230050569**</u>

| Reporting Party: | | Supervisor: |
|---|---|---|

NGCB EXHIBIT G pg. 17 of 29

7/13    Clip 1502 21:33

7/13    Clip 1509  22:04

7/14    Clip 1508  02:32

7/15    Clip 1509 23:05

7/15    Clip 1510 23:37

7/16    Clip 1511 01:33

7/16    Clip 1512 02:08

7/16    Clip 1505 21:03

7/17    Clip 1504-4 04:02

7/17    Clip 1504-5 05:02

7/17    Clip 1506 2101

7/17    Clip 1520  22:07:29

7/17    Clip 1502 23:33

7/18    Clip 1507 02:01



# Separation PAN

Employee: JIAN HU
Effective Date: 08/24/2023
Last Day Worked: 08/17/2023
EE#: 487076

Employer: Aria Resort and Casino, LLC
Company: MGM Resorts International
Department: Card Room-Operations
Position: Dealer Poker
Employment Status: Full time

**Remarks:**

Separation for multiple violations of Aria Resort and Casino, LLC General Rules of Conduct including but not limited to:

- GRC #13 - Misconduct, carelessness, negligence in the performance of one's job, or any serious conduct detrimental to the orderly and ethical operation of business.
- GRC #14 - Job Performance that does not meet Company Standards in the reasonable judgment of the Company.
- GRC #25 - Any conduct which results in theft. (e.g., monies, retail merchandise, Company property), or conduct which results in loss of Company assets and/or revenue resulting from failure to collect payment for any paid services without written management permission.
- GRC #38 - Engaging in any unethical behavior for personal gain.
- GRC#40 - Violation of on-the-job rules, including the rules, regulations and procedures of each department.
- GRC #43 - Disregard or violation of Company or departmental rules, procedures or policies
- Violation of MGM's Conduct Standards Policy

Specifically, Jian Hu, Dealer Poker, admitted that she took chips from a pot during a game that was in-progress, in which she was dealing and without authorization from management.

**EXHIBIT # C12)**

Aria | poker

| Policy | Poker Gratuity Policy / Procedure |
|---|---|
| Effective Date | **May 6, 2024** |

# Poker Gratuity Policy / Procedure

## Purpose

To define how Poker Room employees are to correctly accept gratuities from guests.

## Scope

Applicable to all ARIA Poker Room Staff & Dealers.

## Policy

MGM Resorts International permits Poker employees to accept gratuities from guests. A gratuity is often referred to as a tip" or a "toke." Aside from tournaments in which a Staff Fee is collected as part of the buy-in, tips are not mandatory and always given at the discretion of a guest.

## Dealer Procedure

In order to remain consistent in how tips are handled, please note the following stipulations on how Dealers are to accept gratuities while dealing at a table:

- The tip must be freely given to the Dealer by a guest
- Dealers are not permitted to solicit tips from players, including but not limited to:
    - Commenting on the size of pots
    - Complaining about the lack of tips from the table
    - Informing a player voluntarily they forgot to tip: Dealers are permitted to answer a player's question truthfully if asked whether they received a tip or not
    - Discussing tipping on the gaming floor, particularly while pushing in/out of tables
- A tip cannot be taken by a Dealer out of a pot prior to the pot being pushed to the winning Player.
- If a winning Player verbally instructs a Dealer to take a tip not physically given, a Supervisor must be called to the table to witness.
- Players are not permitted to instruct Dealers to take a tip out of a pot they did not win.
- Upon receiving a tip, Dealers are to collect the tip, thank the guest, and place the tip in the designated pocket on their uniform.

    Dealers are not permitted to make change out of their pocket or "color up" tips while at the table. If it becomes necessary to remove chips from their pocket while dealing, a Supervisor must be called to the table to witness. In games where a tip is traditionally given to the Dealer in conjunction with the collection of time rake at the conclusion of the first hand dealt, the Dealer is to push the pot to the winning Player who will then give the Dealer the time rake. If a tip is also included, the Dealer will separate the rake from the tip, drop the rake, thank the

**EXHIBIT #** _(13)_

guest, and place the tip in their pocket. This satisfies the above requirement that the tip must be freely given by the guest. If the winning Player verbally instructs the Dealer to collect the rake and tip prior to pushing the pot, a Supervisor must be called to the table to confirm the Player's wishes and witness the collection.

- If a Dealer is dealing a tournament table and receives a tip, it must be placed into the toke box designated for tournament tokes immediately upon the Dealer being relieved from the table.
- Dealers are permitted to accept slot TITO tickets and sports bet tickets as gratuities. TITO tickets received in excess of $500 must be reported to the Shift Manager.
- Dealers who receive a $500 chip or higher as a tip must inform the Shift Manager prior to cashing out the tip.
- If a Dealer receives a tip by any method not covered above, they must inform the Shift Manager of the tip and the manner in which it was received.

## Staff Member Procedure

In order to remain consistent in how tips are handled, please note the following stipulations on how Staff members are to accept gratuities while on the gaming floor:

- The tip must be freely given to the Staff member by a guest.
- If a guest verbally instructs a Staff member to take a tip from their chip stack, the Staff member's direct manager must be notified and confirm the instruction with the guest prior to the Staff member collecting the gratuity.
- Even if a guest expresses their verbal desire to have a given tip shared with other Staff members, the receiving Staff member is not obligated to share the tip.
- Staff members who are job coded as Tournament Supervisors are only permitted to accept cash gratuities prior to the distribution of payouts in any tournament they are assigned to work. Once payouts begin, all cash gratuities must be placed in the toke box designated for tournament tokes. This restriction is in place until two (2) hours after the conclusion of the tournament they were assigned to work.
- If a Staff member is given funds by a guest to purchase an item or good on their behalf, the guest must be offered any change in return as a result of the transaction. If a guest verbally states the Staff member is permitted to "keep the change," the Staff member's direct manager must be notified.
- Staff members are permitted to accept slot TITO tickets and sports bet tickets as gratuities. TITO tickets received in excess of $500 must be reported to the Shift Manager.
- If a Staff member receives a tip by any method not covered above, they must inform the Shift Manager of the tip and the manner in which it was received.

Furthermore, Staff members are not permitted to violate poker room operating policies/procedures on behalf of a guest in exchange for a tip. Such a "tip" is considered a bribe and is a violation of company policy. Violations of this nature will result in progressive discipline up to, and including, separation

JIAN HU
8675 MARTINIQUE BAY LANE
LAS VEGAS , NV 89147
TEL: (702)635-5095 Email: jinghu1168@yahoo.com
PLAINTIFF, IN PROPER PERSON

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| JIAN HU,  Pro Se | ) | Case No : |
| Plaintiff, | ) | |
| vs. | ) | |
| ARIA RESORT & CASINO LLC, | ) | |
| MGM RESORTS INTERNATIONAL, | ) | **AFFIDAVIT** |
| ROES BUSINESS ENTITIES I to X, | ) | |
| DOES I to X, inclusive, | ) | |
| Defendants | ) | |

### AFFIDAVIT OF THOMAS EDWARD SAKOWYCH IN SUPPORT OF PLAINTIFF

**Thomas Edward  Sakowych , being duly sworn, state as follows:**

1.      I am over the age of 18 and competent to testify to the matters set forth herein.

2.      My full name is Thomas Edward Sakowych, and my address is 8675 Martinique Bay Ln, Las Vegas, NV, 89147.

3.      I am a  witness to events of the Plaintiff and have firsthand knowledge of the matters discussed in this affidavit.

4.      I have personally reviewed the Plaintiff's Complaint and confirm that the facts stated therein are true and accurate to the best of my knowledge.

5.      I have personally read the entire incident file from defendants, viewed all 20 videos at Nevada Gaming Control Board office. All show the proper procedure for the taking of a pre tip ie Bomb Pot or Time Flop. Always the first hand of the down the pre-tip was taken. I attest what I saw is what all dealers did/ do including myself.

6.      I am aware that the Plaintiff has suffered anxiety,  depression, loss of self confidence, loss of happiness, financial hardship, emotional distress and reputational damage as a direct result of the Defendants' malicious unlawful actions.

7.      I have personally reviewed certain documents and viewed 20 videos evidence from defendants in Nevada Gaming Control Board office that are relevant to this case.

8.      I have noted some part of the video evidence submitted by the Defendants display artificial smearing effects (notably Table 20 Still from DETR), loss of resolution and darkened video specifically Table 20 appears to be tampered with.   Cut and paste as well as

1 of 2                                    EXHIBIT # C14

Time/Date stamped editing. Some of the 20 video evidences, provided by the Defendants, are video screenshots. Highly suspect time and date, stamp editing of all videos on July 17th and 18th, 2023. Appears it was done to concatenate as many pre-tips on the last 24 hours worked. At least 2 videos of the 20 videos submitted by defendants, have two different timestamps (different time, different font and different format).

      9.     Based on my observations, I believe that the Defendant intentionally manipulated evidence, the defendants have tampered with a lot of surveillance videos.

      10,    Since I have been plaintiff's witness, defendants intimidated and tampered with me twice. Defendants also intimidated plaintiff Jain Hu deleted the video plaintiff recorded, that was the evidence plaintiff use for the legal proceeding.

      12.    I am willing to testify under oath regarding my knowledge of the facts and evidence presented in this affidavit.

      13.    If required, I can provide additional documentation or further details supporting the Plaintiff's claims.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 17 _TH_ DAY 2025 at Las Vegas, Nevada.

Signature: _Thomas Edward Sakowych_

Thomas Sakowych

Address: 8675 Martinique Bay Ln, Las Vegas , NV, 89147

Contact: tsakowych@gmail.com , 760-803-6002

State of Nevada
County of Clark

Sworn and subscribed before me this February 17, 2025

Notary Public: _____

Nicholas Bible
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 21-7428-01
My Appt. Expires: Feb. 20, 2025